**Saul SHAPIRO, Plaintiff,**

v.

**Peter C. ALEXANDERSON, as County Executive of the County of Putnam, County of Putnam and Emil Landau, Defendants.**

**Peter C. ALEXANDERSON, as County Executive of the County of Putnam, County of Putnam, Third Party Plaintiffs,**

v.

**Steven ESTRIN, Individually, Steven A. Estrin, Inc., Eberlin & Eberlin, P.C., Leonard J. Eder, Environmental Design Engineers, Individually and d/b/a Eberlin, Eder and Estrin, a Joint Venture, New York State Department of Environmental Conservation, and Suburban Carting, Green Refuse and A & M Carting, Third Party Defendants.**

No. 87 Civ. 8099 (RPP).

United States District Court, S.D. New York.

July 9, 1990.

Daniel Riesel, Sive, Paget & Riesel, P.C., New York City, for plaintiff.

Edward F. Beane, Keane & Beane, P.C., White Plains, N.Y., for defendant Landau.

Michael Bubb, Maloof, Lebowitz & Bubb, New York City, for defendant County.

William J. Rada, Weiner Aliano & Catlett, Nanuet, N.Y., for third party defendant Estrin.

John E. Morris, Morris & Duffy, New York City, for third party defendant Leonard J. Eder, Environmental Design Engineers.

Donna Know, Cherico & Stix, White Plains, N.Y., for third party defendant Suburban Crating Co.

New York State Dept. of Environmental Conservation, White Plains, N.Y.

Aldo V. Vitagliano, Rye, N.Y., for Greentree Carting Co., Inc.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Plaintiff Saul Shapiro ("Shapiro") moves and defendants Peter C. Alexanderson and the County of Putnam ("the County") cross-move for summary judgment, pursuant to Federal Rule of Civil Procedure 56. Defendant Emil Landau ("Landau") moves to amend his answer, pursuant to Federal Rule of Civil Procedure 15.

### Background

In December 1968, Shapiro and Landau purchased, as tenants in common, an undeveloped 100 acre parcel of land in Putnam County on Old Route 6, Carmel, New York. On March 25, 1975, the County executed a contract to purchase from Landau and Shapiro ("the owners") approximately half of said parcel ("the site") for use as a solid waste disposal site, also commonly known as a landfill. At the time, it was not disclosed to the County that the owners paid Frank Barbarita ("Barbarita"), the County Director of Civil Defense, an illegal commission for acting as the real estate broker on the deal. The contract of sale provided in part:

> The purchasers, after signature on this contract and resolution by the Board of Supervisors of the County of Putnam, State of New York, shall have the right to enter upon the premises and to commence landfill operations and any other operations, tests, experiments needed for

the use of the premises initially as a landfill operation.

Should this contract not be consummated, the purchasers, in consideration of being able to enter upon the land, shall restore the property to its status quo ante.

Record on Appeal at 533, *Emil Landau and Saul Shapiro v. Joseph Percacciolo, et al.*, No. 704/1976 (N.Y.Sup.Ct., Dec. 21, 1977).

On March 27, 1975, third party defendant New York State Department of Environmental Conservation ("the DEC") granted approval for the County to construct and operate for ninety days a solid waste management facility at the site in accordance with plans drawn up for the County by third party defendant Eberlin, Eder & Estrin. Third party defendant Steven A. Estrin, Inc. ("Estrin") proceeded to manage the County's landfill operation at the site until May 6, 1975. On May 7, 1975 the County Highway Department took over management responsibilities at the site.

The closing on the contract between the County and the owners was then delayed when two taxpayer suits were brought in October 1975 seeking injunctions against the closing on the grounds that the contract was null and void. The New York State Supreme Court enjoined the closing through injunctions issued on October 6, 1975 and October 20, 1975, respectively. All injunctions were dissolved on April 13, 1976 by an order of the New York State Supreme Court. The Supreme Court's order also dismissed the taxpayer suits and declared the contract to be valid.

In June 1976, Landau and Shapiro brought suit against the County seeking specific performance of the contract and compensation for damage caused to the site by the County. In July 1976, following a series of proceedings between the County and the DEC, as well as the disclosure that Barbarita had received a commission, the County terminated its approximately sixteen months of use of the site as a landfill and passed a resolution rescinding the contract.

In December 1977, the State Supreme Court ruled that Shapiro and Landau were entitled to specific performance of the contract. Then on December 29, 1978, the Appellate Division reversed the Supreme Court decision on the grounds that the contract was unenforceable because the commission received by Barbarita violated the terms of the contract, state law and public policy. *Landau v. Percacciolo*, 66 A.D.2d 80, 412 N.Y.S.2d 378 (2d Dept.1978). The New York Court of Appeals affirmed the Appellate Division's decision. 50 N.Y.2d 430, 429 N.Y.S.2d 566, 407 N.E.2d 412 (1980). A subsequent, unappealed decision by the Supreme Court denied requests by Landau and Shapiro for compensation for damages to the site caused by the County during its operation of the landfill, because "they [the owners] cannot maintain this action for alleged damages arising from a properly rescinded unenforceable contract, notwithstanding the possible harsh consequences." Ex. I to Shapiro Aff. (Sept. 7, 1989).

In 1980, the DEC informed Shapiro and Landau that a preliminary investigation had revealed that the site contained hazardous materials which were leaching into the water supply. In November 1985, Shapiro requested a portion of all samples taken by the DEC from the site. Shapiro claims to have employed Nanco Lab, Inc. and Estrin and to analyze water samples. In March 1986, Shapiro retained Hart Associates, Inc. (Hart) to investigate the site and set forth a plan for remedying the hazardous substance problems at the site. To facilitate the Hart project, Shapiro employed the firm of Badey & Watson to conduct "survey and mapping work." Shapiro Aff. at 12, ¶ 29 (Sept. 7, 1989). In 1986, Shapiro also retained the law firm of Beveridge & Diamond "to advise me of my rights under [the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 *et seq.*] CERCLA and common law to enforce compliance and recover my response costs from the County and Landau." *Id.* at 10, ¶ 23.

In 1987, Shapiro retained his current counsel, Sive, Paget & Riesel, P.C., to bring this action, which was filed on November

18, 1987 seeking full compensation from the County for all "necessary costs of response" to the release and threat of release of hazardous substances at the site, as well as contribution from Landau toward the response costs and for other unpaid expenses. In addition, Shapiro seeks declaratory judgments designating the County and Landau as persons liable for future response costs.

### Discussion

### I. Res Judicata and Collateral Estoppel

■ The state court decisions described above denied the validity of the contract for the sale of the site and denied the owners' requests for compensation for damage to the site caused by the County. The County argues that those decisions have res judicata and collateral estoppel effect in this action. Under 28 U.S.C. § 1738, these New York State court judgments must be given the same effect they would have in the courts of the state under state law. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380–81, 105 S.Ct. 1327, 1331–32, 84 L.Ed.2d 274 (1985).

The Second Circuit recently observed that "New York law is clear [that].... a claim is not barred by res judicata if the court in which the first action was brought lacked subject matter jurisdiction to adjudicate the claim." *Cullen v. Margiotta*, 811 F.2d 698, 732 (2d Cir.) (citing *Salwen Paper Co. v. Merrill Lynch, Pierce Fenner & Smith, Inc.*, 72 A.D.2d 385, 424 N.Y.S.2d 918, 922 (2d Dept.1980); *Mural Arts, Inc. v. Sonsandi*, 82 N.Y.S.2d 153, 154–55 (N.Y. Sup.Ct.1948); Restatement (Second) of Judgments § 26(1)(c) (1982); 5 Weinstein, Korn & Miller, New York Civil Practice at 50–140, ¶ 5011.18 (1985)), cert. denied sub nom., *Nassau County Republican Committee v. Cullen*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987); *see also Marrese*, 470 U.S. at 384 n. 3, 105 S.Ct. at 1333 n. 3 ("we do not believe that federal courts should fashion a federal rule to preclude a claim that could not have been raised in the state proceedings"). It is undisputed that a CERCLA claim cannot be brought in state court. *See* 42 U.S.C.

§ 9613(b). Accordingly, the judgments in the New York action do not bar the subsequent assertion of CERCLA claims herein.

The County's contention that the state court findings have collateral estoppel effect in this action is also meritless. A finding of fact in a New York State proceeding has preclusive effect only when the issues in both proceedings are identical and the issue in the first matter was material and essential to the judgment. *Ryan v. New York Telephone*, 62 N.Y.2d 494, 478 N.Y.S.2d 823, 467 N.E.2d 487 (1984). The finding by the state court that the contract between the owners and the County was unenforceable and could not serve as a basis for holding the County liable for damage to the site is not identical to a finding that the County cannot be held strictly liable under CERCLA for costs of response to the release and threats of release of hazardous substances. The findings essential to the state court judgments concern the validity of the contract and are immaterial to CERCLA liability.

### II. CERCLA

Shapiro bases his claims on CERCLA's provisions which enable a private individual to recover his "necessary costs of response" to "a release, or a threatened release ... of a hazardous substance." 42 U.S.C. § 9607(a); *State of New York v. Shore Realty Corp.*, 759 F.2d 1032, 1042–1043 & n. 16 (2d Cir.1985); *City of Philadelphia v. Stepan Chemical Co.*, 544 F.Supp. 1135 (E.D.Pa.1982). CERCLA designates four categories of "covered persons" who are strictly liable for "response costs":

(1) the owner or operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous sub-

stances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities or sites selected by such person.

42 U.S.C. § 9607. In addition CERCLA provides covered persons with a defense from strict liability if they:

can establish by a preponderance of the evidence that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by—

(1) an act of God;

(2) an act of war;

(3) an act or omission of a third party other than an employee or agent of defendant, or than one whose act or omission occurs in connection with a contractual relationship (except where the sole contractual arrangement arises from a published tariff and acceptance for carriage by a common carrier by rail), if the defendant establishes by a preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned, taking into consideration the characteristics of such hazardous substance, in light of all relevant facts and circumstances, and (b) he took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions.

42 U.S.C. § 9607(b).

There is no genuine issue of fact as to whether the site constitutes a "facility" under Section 9607(a). *See* 42 U.S.C.

§ 9601(9); *Shore Realty Corp.*, 759 F.2d at 1043 n. 15. There also is no genuine issue of fact as to whether the dumping which occurred on the site from March 1975 through July 1976 has led to "a release, or a threatened release ... of a hazardous substance" at the site. Experts and investigative reports agree that the primary problem is due not to the dumping of hazardous industrial waste at the site, but to the emanation of hazardous leachate, which results from water percolating through solid waste and becoming contaminated with hazardous substances "contained within many everyday, household products." *See* Iannone Aff. at 8–9, ¶ 18 (Nov. 16, 1989); Pl. Br. at 14 n. 14 (Sept. 8, 1989).[1]

### A. Covered Persons

The first step in assessing CERCLA liability for the costs of response to a hazardous substance problem is determination of which parties are "covered persons" and therefore subject to strict liability for the release or threatened release of hazardous substances at the site. The owners and the County each contend that it does not fall within one of the four categories of "covered persons."

■ The County argues that it should not be a covered person because the releases and threats of release are entirely due to the dumping which occurred from March 27, 1975 through May 6, 1975 when Estrin managed the site. The argument is without merit, because the County is strictly liable as an "operator" during the period when Estrin managed the site. The contractual right to operate the landfill belonged to the County; the DEC permit to operate the landfill was issued to the County; and Estrin managed the site pursuant to an agreement with the County. Accordingly, the County may be liable under Sec-

---

1. The reports of Limnology Information and Freshwater Ecology, Inc. ("LIFE"), a consulting firm retained by the County, reveal a steady increase in hazardous leachate from the site during the Fall of 1975 through May 1976, when the last LIFE report was filed. Iannone Aff. at 8, ¶ 18 (Sept. 7, 1989). In addition, the March 1987 report prepared by Wehran Engineering, P.C. for the DEC and the independent Hart report prepared for plaintiff both conclude that hazardous leachate is emanating from the solid waste placed in the landfill during the period of March 1975 through July 1976. Ex. C to Iannone Aff. (Sept. 7, 1989); *Id.* at 6, ¶ 13.

tion 9607(a)(2).[2]

■ The County also argues that it exercised due care in its operation of the site. Since CERCLA subjects operators to strict liability, *see Shore Realty Corp.*, 759 F.2d at 1042, this "due care" argument is only viable as part of a contention that the County is entitled to a Section 9607(b)(3) defense. That defense is available in limited circumstances when a covered person has exercised due care and a third party caused the release or threat of release. An argument that the County exercised due care and that the acts of Estrin were solely responsible does not entitle the County to a Section 9607(b)(3) defense because Estrin acted in connection with an agreement with the County.

■ There is also the possibility that the County exercised due care and that the negligence of the owners, after the County abandoned the site, caused the release and threats of release. The County's expert endorses such a hypothesis by claiming that the County constructed a device called a berm which would have prevented the leaching but for the owners' failure to maintain the berm. Karell Aff. at 11, ¶ 19. Shapiro's expert states that the berm never existed and that if it had, then it would have been ineffective. Iannone Aff. at 2–4, ¶¶ 3–8 (Nov. 16, 1989). There are issues of fact material to whether the County exercised due care and to whether the owners' negligence caused the leachate problems. Accordingly, the County's argument that the owners are solely responsible for the release and threats of release does not entitle the County to a Section 9607(b)(3) defense on these motions.

■ Shapiro and Landau, owners of the site since December 1968, are both covered persons under Section 9607(a)(1); however, they argue that they are entitled to the Section 9607(b)(3) defense as innocent land-

owners. According to the owners, the Section 9607(b)(3) defense is available to them because the release and threats of release of hazardous substances were due solely to the acts of the County. But the Section 9607(b)(3) defense is not available to the owners of the site because the landfill was operated by the County "in connection with a contractual relationship" with the owners. Under the contract of sale between the County and the owners, the owners gave the County the right to operate a dumping operation prior to closing. This right was part of the consideration for the County's signing the contract of sale.

Section 9607(b)(3) also cannot be applied to the owners because there are issues of fact material to whether the owners exercised due care and took precautions against both foreseeable acts and foreseeable consequences. As discussed above, the County's expert states that the leachate problem was caused by Shapiro's neglect of the berms and drainage system. Moreover, Shapiro himself concedes that he did not engage in any response to the leachate problems until 1985, nearly five years after he contends the DEC first informed him of the leachate problem.[3] Accordingly, issues of fact exist as to whether the owners exercised due care and took reasonable precautions.

### B. *Liability of Covered Persons for Response Costs*

#### 1. CERCLA's System of Equitable Contribution

■ Regardless of Shapiro's degree of responsibility, he still is entitled to bring a CERCLA action against other covered persons to seek contribution for his response costs. *See Smith Land & Improvement Corp. v. Celotex Corp.*, 851 F.2d 86, 90 (3d Cir.1988) (there is no place in CERCLA for a doctrine which prevents a covered person, who is culpable for a portion of the dam-

---

**2.** This decision expresses no opinion on whether Estrin and other third party defendants, who are not parties to these motions, are also covered persons.

**3.** The County contends that Shapiro could foresee that action had to be taken with regard to

the leachate as early as the time of the filing of the June 1976 law suit against the County. In that suit, Shapiro and Landau sought compensation for damage caused to the site by the landfill operation, but did not mention leachate.

ages, from recovering contribution from another covered person, who is also culpable for a portion of the damages) (quoting *Chemical Waste Management v. Armstrong World Industries*, 669 F.Supp. 1285, 1291 n. 7 (E.D.Pa.1987) ("clean hands" doctrine cannot be used to bar CERCLA action)), cert. denied, 109 S.Ct. 837 (1989); *see also Polger v. Republic National Bank*, 709 F.Supp. 204, 208–09 (D.Col.1989).[4] If it is found, after resolution of the issues of fact material to Shapiro's due care, that Shapiro expended a share of the costs greater than his equitable share under the circumstances then other covered persons can be ordered to contribute towards response costs based on their degree of responsibility. Alternatively, if Shapiro is found culpable and the other covered persons are found not to be responsible for the damage, then contribution from the other covered persons is not warranted. The Third Circuit has described this system of contribution among covered persons for privately expended response costs, as consistent with

> Congress' desire to encourage clean-up by any responsible party. If fair apportionment of expense is not assured, it is unlikely that one party will undertake remedial actions promptly when it could simply delay, awaiting a legal ruling on the contribution liability of other responsible parties.

*Smith Land & Improvement Corp. v. Celotex Corp.*, 851 F.2d at 90.[5]

## 2. Validity of the Response Costs

CERCLA entitles a private individual to contribution only with regard to those response costs which are (a) necessary and (b) consistent with the national contingency plan (NCP). 42 U.S.C. § 9607(a)(4)(B). The NCP does not "provide complex and detailed site-specific decisionmaking criteria," *General Electric Co. v. Litton Business Systems, Inc.*, 715 F.Supp. 949, 959 (W.D.Mo.1989) (citing 50 Fed.Reg. 47920), but it does require that response efforts be cost-effective. *See* 40 C.F.R. 300.71; *United States v. Northeastern Pharmaceutical & Chemical Co., Inc.*, 810 F.2d 726, 748 (8th Cir.1986) (citing 42 U.S.C. § 9605(7)); *City of Philadelphia v. Stepan Chemical Co.*, 713 F.Supp. 1484, 1490 (E.D.Pa.1989). The County argues that summary judgment should be granted in its favor because Shapiro has failed to establish that any of his alleged costs of response are necessary or cost-effective. Shapiro's claimed costs of response include: payments for analysis of water samples, payments for an investigation and the drafting of a remedial plan, payments for survey and mapping work in connection with the investigation and plan, and payments to two law firms to enforce his rights under CERCLA.

The County's contention that Shapiro's responses were unnecessary and not consistent with the NCP rests on the County's expert's view that the there would not be any problems if Shapiro would only maintain the berm. Since there are issues of fact material to this contention, *see supra,*

4. Only one district court has held that the "clean hands" doctrine can prevent a covered person who is responsible for part of the damages from recovering contribution from another covered person who is also responsible. *Mardan Corp. v. C.G.C. Music, Ltd.*, 600 F.Supp. 1049, 1057 (D.Ariz.1984), aff'd on other grounds, 804 F.2d 1454 (9th Cir.1986). Although the Ninth Circuit did not review that portion of the decision on appeal, it expressed doubt in dicta as to whether the district court had been correct in light of the unanimous conclusion among courts and commentators that "a federal right of contribution attends CERCLA." 804 F.2d at 1457 n. 3.

5. In a 1986 amendment to CERCLA, Congress provided for covered persons being sued under Section 9607(a) to bring an action for contribution against other covered persons. 42 U.S.C. § 9613(f)(1). Congress also stated, "Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 or section 9607 of this title." *Id.* That sentence would imply that even though Shapiro has not been sued under Section 9607(a), he still has a right to seek contribution in this action from other covered persons. *See Smith Land & Improvement Corp. v. Celotex Corp.*, 851 F.2d at 90; *Chemical Waste Management*, 669 F.Supp. at 1291. Section 9613(f)(1) concludes, "In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate."

**480**

the County's argument is not grounds for granting summary judgment.

◾ The County also asserts that it is at least entitled to partial summary judgment on Shapiro's claim to attorney's fees, because as a matter of law such expenses are not recoverable under CERCLA. The County has cited only one court which has held that a private party may not claim attorney's fees as costs of response. *See T & E Industries, Inc. v. Safety Light Corp.*, 680 F.Supp. 696, 708 & n. 13 (D.N.J.1988). The district court in *T & E Industries* reasoned that attorney's fees are "enforcement costs" rather than response costs, because they are expended in an attempt to obligate liable parties to pay for the costs of response. The Court finds that this reasoning contradicts Congress' definition of "respond" and "response" in 42 U.S.C. § 9601(25): "The term 'respond' or 'response' means remove, removal, remedy and remedial action, all such terms (including the terms 'removal' and 'remedial action') include enforcement activities related thereto." *See General Electric Co. v. Litton Business Systems, Inc.*, 715 F.Supp. at 958–59 (attorney's fees are recoverable as private response costs because of both Section 9601(25) and the "intent of Congress that CERCLA be given a broad interpretation so as not to restrict the liability of those responsible parties"). Accordingly, Shapiro may recover those attorney's fees which are reasonable and which are expended in successfully obtaining compensation for proper response activities from liable parties. In addition, Shapiro's attorney's fees may not be fully recoverable in the event that he is found to be partially responsible for the damage to the site.

### 3. Landau's Reformation Defense

◾ Landau argues that Shapiro is barred from seeking contribution from him because he is entitled to reformation of a clause in an option agreement ("the Option"), dated January 1, 1986, between himself and Shapiro. Under the Option, Shapiro agreed to undertake certain of Landau's costs of ownership in return for the option to purchase Landau's half of the tenancy. The Option expired in September 1989 when Shapiro terminated the agreement pursuant to his voluntary termination privilege. Option at 3, ¶ 5; *see* Shapiro Aff. at 6, ¶ 12 (Nov. 16, 1989).[6] The period when the Option was in effect—January 1, 1986 through September 1989—is when most of Shapiro's alleged response costs were expended, but is after the occurrence of most of the acts which the County and Shapiro claim caused the damage to the site.

Landau now contends that he was fraudulently induced into signing the Option by Shapiro's misrepresentation that the agreement provided for all, rather than only certain, of Landau's costs of ownership to be paid for by Shapiro. Landau moves to amend his answer so that he can seek to have the Option reformed to reflect that Shapiro contracted to pay all of Landau's costs of ownership.

The Court finds that even if the Option were reformed to reflect the desired change, Landau would still be liable under CERCLA. Section 9607(e) of CERCLA prevents any agreement from transferring a covered person's liability to "any other person"; however, it permits covered persons to make agreements which require other persons "to insure, hold harmless, or indemnify" the covered person "for any liability" under CERCLA.[7] *Cf. Mardan Corp. v. C.G.C. Music, Ltd.*, 804 F.2d 1454 (9th Cir.1986). Landau, an owner of the site since 1968, is a covered person under Section 9607(a)(1) and therefore, in accordance with Section 9607(e), the Option can-

---

**6.** Shapiro also failed to make a payment in March 1989 to extend the expiration date through December 1989. Option at 2, ¶ 4; *see* Shapiro Aff. at 6, ¶ 12 (Nov. 16, 1989).

**7.** No indemnification, hold harmless, or similar agreement or conveyance shall be effective to transfer from the owner or operator of any vessel or facility or from any other person who may be liable for a release or threat of release under this section, to any other person the liability imposed under this section. Nothing in this subsection shall bar any agreement to insure, hold harmless, or indemnify a party to such agreement for any liability under this section.
42 U.S.C. § 9607(e).

not relieve him of his status as a liable, covered person. Moreover, the Option cannot function as an agreement by Shapiro "to insure, hold harmless, or indemnify" Landau for any of Landau's liability in this suit because the Option is no longer in existence.

 However, if Shapiro fraudulently represented to Landau that Landau did not have to pay for any costs concerning the property during the period of January 1986 through September 1989, then this would be an equitable consideration to be taken into account with regard to Landau's responsibility for the site during that 33 month period. In other words, if the damage to the site is due, in whole or in part, to neglect of the site by the owners from January 1986 through September 1989, then the fraud would entitle Landau to a favorable equitable consideration as to his share of responsibility for the damage during those 33 months. However, if the damage to the site is due to the acts which occurred prior to January 1986, then Shapiro's allegedly fraudulent representation to Landau affects neither Landau's degree of responsibility for the damage nor the amount which Landau must contribute to valid response costs as a covered person.

Since reformation of the Option cannot operate as a defense to Landau's CERCLA liability, the Court denies his motion to amend his answer to assert a reformation defense.[8] However, at trial Landau will be permitted to come forward with evidence that Shapiro had represented to him that Shapiro would bear full responsibility for maintaining the site during the period of January 1986 through September 1989. Such evidence is admissible to rebut any evidence that Landau bears responsibility for causing damage to the site during those 33 months.

### Conclusion

The Court denies the motion and cross-motion for summary judgment. There are genuine issues of fact material (a) to whether the County is entitled to a Section 9607(b)(3) defense to liability, (b) to the validity of Shapiro's response costs, and (c) to the appropriate equitable share which each party must contribute to those response costs, in the event that the parties are found to be covered persons without a Section 9607(b) defense and the response costs are found to be valid. The Court also denies Landau's motion to amend his answer to assert a reformation defense.

All parties, including third party plaintiffs and third party defendants, are to attend a pretrial conference at 9:00 A.M. on July 20, 1990.

IT IS SO ORDERED.

---

**8.** It is also questionable whether it is possible under New York law to reform a contract which has expired. *See Green v. Wasserman,* 236 N.Y. S.2d 430, 435 (N.Y.Civ.Ct.1962).