**AMCAST INDUSTRIAL CORPORATION and Elkhart Products Corporation**

v.

**DETREX CORPORATION.**

No. S88–620 (RLM).

United States District Court, N.D. Indiana, South Bend Division.

April 9, 1992.

D. Jeffrey Ireland, Armistead W. Gilliam, Jr., Ann Wightman, Dayton, OH, John J. Lorber, Robert J. Palmer, South Bend, IN, for plaintiffs.

Arthur G. Surguine, Jr., James J. Shea, Fort Wayne, IN, for defendant.

## MEMORANDUM AND ORDER

MILLER, District Judge.

Following the order of November 18, 1991 granting in part and denying in part the parties' cross-summary judgment motions, the court continued the trial and afforded the plaintiffs, Amcast Industrial Corporation and Elkhart Products Corporation (collectively "Amcast"), until December 16 to move for partial summary judgment on the issue of damages. Amcast has filed its motion, and the briefing is now complete. The court assumes familiarity with the facts set forth in the November 18 order and with the procedural history of this case. 779 F.Supp. 1519.

The court acknowledges both parties' requests for oral argument on this motion, but declines to hold an oral argument in light of the court's heavy calendar between now and the scheduled trial and the court's familiarity with the case.

At the pretrial conference held on November 25, 1991, the plaintiffs indicated that they would dismiss their negligence and punitive damages claims without prejudice if this second motion for partial summary judgment is granted; if the motion is denied, these claims are scheduled for trial on May 11, 1992. In this motion, Amcast asks the court to grant summary judgment as to the liability of defendant Detrex Corporation ("Detrex") in Count II of the complaint pursuant to 42 U.S.C. § 9607(a)(3), as to the amount of response costs Amcast is entitled to recover under Counts I and II of the complaint, and as to Detrex's liability for Amcast's future costs in responding to the trichloroethylene ("TCE") contamination at the Elkhart Products Corporation ("EPC") facility.

## I. THE MOTION TO AMEND AND ADD A COUNTERCLAIM

■ As a preliminary matter, on February 7, 1992, Detrex moved for leave to amend its answer to include a counterclaim under 42 U.S.C. § 9613. Trial is scheduled to commence on May 11, and the suit has been pending for four and a half years. Leave to amend is to be freely given when justice so requires, Fed.R.Civ.P. 15(a), but determination of the requirements of justice rest within the trial court's discretion. *Campbell v. Ingersoll Milling Machine Co.*, 893 F.2d 925, 927 (7th Cir.), *cert. denied* 498 U.S. 844, 111 S.Ct. 127, 112 L.Ed.2d 95 (1990). Delay alone is not a sufficient basis for denial of a requested amendment, *Feldman v. Allegheny Int'l, Inc.*, 850 F.2d 1217, 1225 (7th Cir. 1988), but a presumption against amendment grows with delay. *Tamari v. Bache & Co. S.A.L.*, 838 F.2d 904, 908 (7th Cir.1988).

> The burden to the judicial system can justify a denial of a motion to amend "even if the amendment would cause no hardship at all to the opposing party." Because substantive amendments shortly before trial serve to defeat the public's interest in speedy resolution of legal disputes, "[a] district court judge is entitled, in such circumstances, to refuse to allow a plaintiff's amendment."

*Perrian v. O'Grady*, 958 F.2d 192, 194 (7th Cir.1992) (citations omitted).

■ The motion to amend was made three months before trial, after years of discovery and the filing of serial summary judgment motions. As is discussed below, denial of the amendment will not prejudice Detrex's right to pursue its would-be counterclaim in a separate action. Accordingly, while amendment to these pleadings would jeopardize the trial date of a suit in its fifth year of pendency, the motion's denial will prejudice nobody.

For these reasons, the court now denies the motion to amend.

## II. AMCAST'S SUMMARY JUDGMENT MOTION

### A. Count II

■ Amcast claims that it is entitled to summary judgment on Detrex's liability in Count II because the court has already found that Detrex arranged for the disposal of haz-

ardous substances on the EPC site. In a cost recovery action under 42 U.S.C. § 9607(a)(4)(B), a private party must show that: (1) the defendant is a covered person under 42 U.S.C. § 9607(a); (2) there has been a release or threatened release of a hazardous substance from the defendant's facility; (3) the plaintiffs incurred response costs as a result of the release or threatened release; and (4) the plaintiffs' response costs were necessary and consistent with the national contingency plan ("NCP"). *Dedham Water Co. v. Cumberland Farms Dairy, Inc.,* 889 F.2d 1146, 1150 (1st Cir.1989); *B.F. Goodrich Co. v. Murtha,* 754 F.Supp. 960, 963–64 (D.Conn.1991); *Artesian Water Co. v. Government of New Castle County,* 659 F.Supp. 1269, 1278–79 (D.Del.1987), *affirmed,* 851 F.2d 643 (3d Cir.1988). Amcast notes that CERCLA liability is strict. *Dedham Water Co. v. Cumberland Farms Dairy, Inc.,* 889 F.2d at 1150; *Amoco Oil Co. v. Borden, Inc.,* 889 F.2d 664, 670, n. 8 (5th Cir.1989); *Rodenbeck v. Marathon Petroleum Co.,* 742 F.Supp. 1448, 1456 (N.D.Ind. 1990). The elements of a prima facie case are straightforward and several courts have found that liability may be resolved in a summary judgment motion. *United States v. Bliss,* 667 F.Supp. 1298, 1308–09 (E.D.Mo. 1987).

Amcast claims that each element of a prima facie case for Detrex's liability under 42 U.S.C. § 9607(a)(3) (arranging for disposal of hazardous substances) has been established by the November 18, 1991 order. Detrex was found to have released hazardous substances into the environment, and Amcast was found to have incurred costs that were necessary and consistent with the NCP. Detrex cannot avail itself of the statutory defenses to liability: the environmental contamination did not result from an act of God, an act of war, or an act of a completely independent third party. The November 18 order found that Detrex's drivers or Detrex's contractor, Transport Services, were responsible for spills which occurred between 1978 and 1986; therefore, Detrex is a responsible party within the meaning of 42 U.S.C. § 9607(a)(3). Further, Detrex "disposed" of a hazardous waste when it spilled TCE at the EPC site. Amcast contends that the law of

the case establishes the remaining elements of CERCLA liability. The November 18 order determined that Amcast incurred cleanup costs that were necessary and consistent with the NCP.

Detrex responds that Amcast's motion for summary judgment on Count II goes beyond the order of November 25. That order allowed the plaintiffs until December 16, 1991 to file a motion as to damages, but did not allow the plaintiffs to file another motion for summary judgment on liability. Therefore, Detrex asks the court to ignore the portion of the motion which requests summary judgment as to liability under Count II.

Amcast suggests that the motion for summary judgment on Count II is made in the interest of judicial economy, as it would tie up loose ends in this litigation and allow for the presentation of a complete record on appeal. Amcast also claims that a finding of Detrex's liability under Count II would not affect Detrex's liability for damages; whether Detrex is liable under Count I or II or both, it is jointly and severally liable for Amcast's response costs.

In the alternative, Detrex asks the court to reconsider the November 18 order and grant summary judgment in Detrex's favor on Count II. However, a motion for reconsideration should not be used to relitigate matters upon which the court has ruled. *Evans, Inc. v. Tiffany & Co.,* 416 F.Supp. 224, 244 (N.D.Ill.1976). If the motion for reconsideration does not demonstrate manifest error of law or fact or present newly discovered evidence, it should be denied. *Dresser Industries, Inc. v. Pyrrhus AG,* 936 F.2d 921, 936 (7th Cir.1991). Detrex's arguments as to Count II do not demonstrate manifest error or present newly discovered evidence. Therefore, the court will not reconsider Detrex's motion for summary judgment as to Count II.

The court finds that, in light of the order of November 18, 1991, summary judgment should be granted in the plaintiffs' favor as to Count II, except as to any allegations related to an overfill spill.

## B. Count I

### 1. Joint and Several Liability

Detrex argues that CERCLA liability may be several rather than joint and several, and that Detrex should be allowed to show either the divisibility of the harm or the degree of harm caused by Detrex. Detrex cites *United States v. Hardage,* 116 F.R.D. 460, 465–66 (W.D.Okla.1987), in which the court stated:

A careful review of the legislative history of CERCLA establishes Congress wished to avoid mandatory joint and several liability. The Court may impose joint and several liability where the harm is single and indivisible. However, defendants must be given the opportunity to demonstrate the divisibility of the harm and the degrees to which each defendant is responsible. This determination of liability turns on whether the harm caused ... is "divisible" or "indivisible." The Court notes that imposition of joint and several liability is permissive, but not mandatory. Congress intended issues of liability under CERCLA, including joint and several liability, to be determined under traditional and evolving principles of federal common law. The Court may also apportion damages according to "the degree of involvement by the parties in the generation, transportation, treatment, storage, or disposal of the hazardous wastes," and "the degree of care exercised by the parties with respect to the hazardous waste concerned." *United States v. A & F Materials Co.,* 578 F.Supp. 1249, 1256 (S.D.Ill.1984).

(citation omitted).

Detrex suggests applying a case-by-case evaluation of the facts in order to determine whether to impose joint and several liability. *State of Idaho v. Bunker Hill Co.,* 635 F.Supp. 665, 676 (D.Idaho 1986). The Fourth Circuit applied joint and several liability in a case in which the environmental harm was indivisible among multiple generators of hazardous wastes. However, the court stated:

While CERCLA does not mandate the imposition of joint and several liability, it permits it in cases of indivisible harm. In each case, the court must consider traditional and evolving principles of federal common law, which Congress has left to the courts to supply interstitially.

Under common law rules, when two or more persons act independently to cause a single harm for which there is a reasonable basis of apportionment according to the contribution of each, each is held liable only for the portion of harm that he causes.

*United States v. Monsanto Co.,* 858 F.2d 160, 171 (4th Cir.1988) (citations and footnote omitted), *cert. denied,* 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989).

Detrex acknowledges that it has the burden of demonstrating that a reasonable basis for apportionment of damages exists, *United States v. Alcan Aluminum Corp.,* 755 F.Supp. 531 (N.D.N.Y.1991); *Kelley v. Thomas Solvent Co.,* 727 F.Supp. 1532, 1552 (W.D.Mich.1989), and claims that it can do so. Detrex submits the affidavit of Mark Rowland, a groundwater hydrologist, to demonstrate that the harms caused by Detrex are distinct from those caused by other parties. There were, at one point, 783 gallons of TCE in the soil and groundwater beneath the EPC facility. Detrex claims that none of this TCE is attributable to the delivery spills for which it is held liable. Mr. Rowland believes that the TCE which spilled during deliveries did not reach the soil, but evaporated without causing harm to the soil or groundwater.

Mr. Rowland states that the maximum amount of TCE spilled during deliveries was 49.3 gallons. This constitutes a small percentage (6.296%) of the TCE found in the soil and groundwater. If Detrex is not responsible for all of the delivery spills, then it is responsible only for the 2.8 gallons of spillage from Detrex trucks, or .358% of the 783 gallons of TCE. Therefore, Detrex asserts that there is a reasonable basis for apportionment of damages.

This case involved but one contaminant, unlike the multi-waste cases in which apportionment was unreasonable because of the synergistic effect of commingling contaminants. In *Kelley v. Thomas Solvent Co.,* 727 F.Supp. at 1553–54, the court found joint and several liability proper because the defen-

dants presented no evidence demonstrating that the environmental harm was divisible. In one of the contaminated sites, a mixture of pollutants had migrated from the defendants' facilities. *See also O'Neil v. Picillo,* 682 F.Supp. 706 (D.R.I.1988), *affirmed,* 883 F.2d 176 (1st Cir.1989), *cert. denied,* 493 U.S. 1071, 110 S.Ct. 1115, 107 L.Ed.2d 1022 (1990).

Detrex distinguishes this case from *United States v. Ottati & Goss, Inc.,* 630 F.Supp. 1361, 1395–96 (D.N.H.1985), in which the hazardous waste was buried in drums throughout the site. In the case at hand, Detrex maintains, the TCE contamination resulting from delivery spills was limited to the delivery area of the EPC facility.

Detrex claims that the court can apportion liability in this case based on the quantity of TCE spilled during delivery compared to the total TCE contamination found. In *O'Neil v. Picillo,* 682 F.Supp. at 725, the court found it impossible to determine which defendant's waste contributed in a specific manner to the contamination, because different substances of differing levels of toxicity could commingle and have a synergistic effect. However, the court noted: "There is no question that the number of drums may be an appropriate criterion for apportioning liability if all of the drums contained identical wastes." *See also United States v. Monsanto Co.,* 858 F.2d at 172, n. 27.

For these reasons, Detrex asks the court to conduct a trial to allow it to establish the negligible amount of damages arising from its "several" liability.

Amcast cites *United States v. R.W. Meyer, Inc.,* 889 F.2d 1497 (6th Cir.1989), *cert. denied,* 494 U.S. 1057, 110 S.Ct. 1527, 108 L.Ed.2d 767 (1990), in which the court noted that the responsible parties bear the burden of proving the divisibility of harm, and that "CERCLA has been interpreted to impose joint and several liability when the environmental harm is indivisible ... and to allow for apportionment when two or more persons independently are responsible for a single harm that is divisible." 889 F.2d at 1507 (citing *United States v. Monsanto Co.,* 858 F.2d 160, 171–73 (4th Cir.1988)). The court went on to state that CERCLA permits actions for contribution among parties who are found jointly and severally liable. 889 F.2d at 1507. Amcast claims that although imposing joint and several liability may result in some defendants paying more than their share of the harm, it would further Congressional intent for "those proven at least partially culpable to bear the cost of the uncertainty." *O'Neil v. Picillo,* 883 F.2d at 179.

Amcast notes that the volume of TCE alone is an insufficient basis upon which to find the harm divisible, citing *United States v. Monsanto,* 858 F.2d at 172–73. However, more than one contaminant was found to have caused environmental harm in the *Monsanto* case:

> Common sense counsels that a million gallons of certain substances could be mixed together without significant consequences, whereas a few pints of others improperly mixed could result in disastrous consequences. Under other circumstances proportionate volumes of hazardous substances may well be probative of contributory harm. In this case, however, volume could not establish the effective contribution of each waste generator to the harm at the · . . . site.

858 F.2d at 172–173 (footnotes omitted).

Amcast also submits the affidavit of its expert witness, John Mundell, to show that volume alone is an insufficient basis to divide the harm. Mr. Mundell states that the environmental harm is indivisible because "distinct areas indicating separate spill events are not apparent." Further, the soil and groundwater diffuse chemical spills from the source point, making it impossible to determine whether response costs can be attributed to a particular spill.

Amcast claims that to avoid joint and several liability, Detrex must demonstrate a reasonable basis for apportionment in addition to demonstrating the divisibility of the harm. In *United States v. South Carolina Recycling and Disposal, Inc.,* 653 F.Supp. 984 (D.S.C.1984), *affirmed in part and vacated in part, United States v. Monsanto,* 858 F.2d 160 (4th Cir.1988), *cert. denied,* 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989), the district court determined that the

apportionment of costs of responding to environmental harm could not be based solely on the volume of wastes each party generated. In that case, however, unlike the case at hand, there were several types of hazardous wastes that were leaking from containers and commingling, so it was impossible to ascertain the degree of harm caused by each generator.

Although only one contaminant is involved in this action, unlike those cases in which the court expressed concern over commingling of contaminants, the court is not convinced that the harm caused at the EPC site is readily divisible or that there is a reasonable basis for apportionment. In light of Mr. Mundell's affidavit, it appears that the TCE contamination caused by Detrex is not limited to a single area; the earlier summary judgment holdings concerning the "open 'valve" spill support that conclusion. Further, the TCE spilled during deliveries was less resistent to mobilization through the soil than stillbottoms created during EPC's processing and spilled by EPC employees. The TCE delivered by Detrex was also more concentrated than the TCE in stillbottoms. Therefore, the amount spilled by EPC employees, compared to the amount spilled by Detrex employees, even if it can be determined, may not be a reasonable basis for apportionment of response costs.

In the usual case, equitable apportionment of damages comes into play in a contribution action or claim pursuant to 42 U.S.C. § 9613 after joint and several liability is imposed in a cost recovery action pursuant to 42 U.S.C. § 9607. Detrex asserts, however, that in some CERCLA cases between private parties who are potentially responsible for response costs, it is appropriate to try liability and apportion damages in the same action.

Detrex claims that it would overlook Congressional intent to require it to reimburse Amcast for one hundred percent of its costs. Congress did not intend for minor contributors to fund the entire cleanup of a hazardous waste cite. *United States v. A & F Materials Co., Inc.,* 578 F.Supp. 1249, 1256 (S.D.Ill. 1984). *See also O'Neil v. Picillo,* 682 F.Supp. at 725–26.

Detrex notes that in *Amoco Oil Co. v. Borden,* 889 F.2d at 672, the court recognized that in a cost recovery suit between private parties, "the action is one for contribution, which is specifically recognized under CERCLA. *See* § 9613(f). Under that provision, a court has considerable latitude in determining each party's equitable share." In that case, however, the court concluded that the environmental harm was indivisible and that the plaintiff/owner of the property shared joint and several liability with the defendant/vendor of the property.

In *Shapiro v. Alexanderson,* 741 F.Supp. 472, 478–79 (S.D.N.Y.1990), the court determined that the plaintiff who was responsible for environmental harm could recover contribution from other parties for response costs based on their degree of responsibility. The *Shapiro* court did not suggest, however, that the plaintiff's right to recover in the § 9607 action should be delayed while the parties litigated the degree of culpability of each party. In *Environmental Transportation Systems, Inc. v. Ensco, Inc.,* 763 F.Supp. 384 (C.D.Ill.1991), the court stated:

> Section 9613(f)(1) of CERCLA states that, "[i]n resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate." Thus, it is apparent that a finding that a defendant is a "responsible party" under § 9607(a), as this Court decided ENSCO was ... is only the initial inquiry. Finding that a defendant is a responsible party and thus strictly liable for contribution under § 9607(a) does not mean that all parties are equally responsible and should share costs on a pro rata basis. Rather, such a finding means only that a defendant is *potentially* liable for contribution under CERCLA depending upon the relative fault of the parties. Once a defendant is found to be a responsible party under § 9607(a), the question shifts to *how much* is that defendant responsible for under the provisions in § 9613(f)(1). Thus, ETS's request for pro rata assessment is rejected as patently inconsistent with the dictates of CERCLA.

Section 9613 contemplates a court's assessing the "relative culpability of each responsible party in determining the proportionate share of costs each must bear." *United States v. Monsanto Co.*, 858 F.2d 160, 170 n. 29 (4th Cir.1988). *Environmental Transportation Systems, Inc. v. Ensco, Inc.*, 763 F.Supp. at 388 (emphasis in original). Detrex contends that the court should allocate fault in this action without Detrex having to bring a separate contribution action pursuant to § 9613. Amcast claims that equitable apportionment is only applicable in suits for contribution brought pursuant to 42 U.S.C. § 9613(f), and not in this action, noting that Detrex did not assert a contribution claim. Detrex initially denied all liability. Amcast suggests that Detrex should have to abide by the decision it made earlier in this action not to bring a contribution claim.

Amcast cites *United States v. Pretty Products, Inc.*, 780 F.Supp. 1488, 1503 (S.D.Ohio 1991) ("Comparative fault has no place in a 9607 suit, although it certainly may be relevant in a suit for contribution under 9613."). In *O'Neil v. Picillo*, 682 F.Supp. at 725–26, the court determined that apportionment should await an action for contribution.

I am not insensitive to the possible unfairness involved in holding a few relatively small contributors jointly and severally liable for the entire harm. Indeed, there is no question that in CERCLA actions, like other actions involving joint tortfeasors, a court may consider equitable factors to apportion damages and mitigate the effects of joint and several liability. I believe, however, that issues of fairness and equitable apportionment may be more properly addressed in a subsequent contribution action....

This is consistent with CERCLA's key objective of "facilitat[ing] the prompt cleanup of hazardous dumpsites by providing a means of financing both governmental and private responses, and by placing the ultimate financial burden upon those responsible for the danger." *City of Philadelphia v. Stepan Chemical Co.*, 544 F.Supp. 1135, 1142–43 (E.D.Pa.1982). By delaying thorny considerations of equitable apportionment to a later contribution proceeding, the government is provided immediate funds after the initial liability hearing to take prompt remedial action at the earliest opportunity. In most instances, immediate response to potential disasters caused by seepage and migration can forestall the accrual of considerably higher compensation costs.

(citation omitted). *See also United States v. Stringfellow*, 661 F.Supp. 1053, 1060 (C.D.Cal.1987).

In *United States v. Kramer*, 757 F.Supp. 397, 412 (D.N.J.1991), the court noted that a contribution claim may be brought during the pendency of a cost recovery action under 42 U.S.C. § 9607. The court allowed the plaintiff, in that case the federal government, to recover its response costs, regardless of its own potential liability for contribution. *United States v. Kramer*, 757 F.Supp. at 414. The court further reasoned that § 9607 and § 9613 have different purposes.

Collapsing the distinction between section 107 [42 U.S.C. § 9607] and section 113 [42 U.S.C. § 9613] ignores the clear language and structure of the statute. Section 107 imposes liability "[n]otwithstanding any other provision or rule of law and subject only to" the defenses set forth in section 107(b). Congress enacted section 113 as a separate section to address contribution.

[I]t would be "anomalous" to permit apportionment of clean-up costs among PRPs in a section 113 action and not to permit apportionment in a section 107 action, but *only if* defendants in a section 107 action could not seek contribution in a section 113 action. But the structure of CERCLA does not preclude consideration of equitable factors, including the liability of a PRP who was (or is) plaintiff in a section 107 action. Rather, CERCLA separates those equitable factors from section 107 and considers them in a section 113 contribution action....

... CERCLA was enacted to facilitate cleanup of the tens of thousands of hazardous waste sites in this country. Section 107 permits the Government or a private party to go in, clean up the mess, pay the bill, then collect *all* its costs not inconsis-

tent with the NCP from other responsible parties—even if plaintiff was also responsible for the contamination. Any PRP is entitled under section 113 to bring a contribution action against other PRPs—including the PRP who previously cleaned up the mess and was paid for its trouble through a section 107 proceeding—to apportion costs equitably among all the PRPs. Practically speaking, section 107 permits a PRP, including the Government, to collect all its response costs, even those that that same PRP may be required to pay back to other PRPs as its equitable share in a section 113 proceeding.

What might be called a windfall for a plaintiff PRP in a section 107 action serves as an incentive for private parties to clean up hazardous waste sites, to risk their own capital initially, knowing that by then prevailing in a section 107 action, they will be reimbursed perhaps in excess of what might be shown in a section 113 action to have been their equitable share. If the courts collapse the distinction between a section 107 and 113 proceeding, there will be less incentive for private parties to initiate cleanup, since they would lose the use of that *temporary* windfall gained in a section 107 action.

*United States v. Kramer,* 757 F.Supp. at 416–17 (emphasis in original) (footnote omitted).

Many of the cases upon which Detrex relies analyzed contribution claims under § 9613, *e.g., Amoco Oil v. Borden, Inc.,* 889 F.2d at 672; *Shapiro v. Alexanderson,* 741 F.Supp. at 479, n. 5. In *In re Dant & Russell, Inc.,* 951 F.2d 246 (9th Cir.1991), the court applied § 9613 to apportion liability in a § 9607 action, but relied in part on the fact that the party seeking response costs had admitted CERCLA liability. Amcast has made no such admission. Further, the *Dant & Russell* court apportioned liability within the context of a proof of claim in a bankruptcy case.

Detrex cites *FMC Corp. v. Northern Pump Co.,* 668 F.Supp. 1285 (D.Minn.1987), in which the plaintiff brought a § 9607 claim and there was no § 9613 counterclaim. In that case, the district court determined that

one of the potentially responsible persons was not liable. The court noted that two factors were necessary to impose liability for response costs: CERCLA liability and accountability for disposal of hazardous wastes. The court found that one party was potentially liable under CERCLA, but it was not accountable for disposal of hazardous wastes. The court's decision was based in part on the fact that the party had been released from liability by agreement, and that the party had not disposed of hazardous wastes at the site. *FMC Corp. v. Northern Pump Co.,* 668 F.Supp. at 1290–91. In this case, Detrex has not been released from liability, and Detrex was found to have released TCE at the EPC site.

The court finds the reasoning of *United States v. Kramer,* 757 F.Supp. 397, persuasive. CERCLA's intent is better realized when the apportionment of liability takes place in a claim under § 9613. Section 9607 does not provide for apportionment of liability, and has only a limited number of defenses that do not apply to this action. Therefore, the court concludes that it should not engage in equitable apportionment of the parties' liability in this case. Apportionment will have to await Detrex's filing of an action under § 9613.

■ Detrex argues that Amcast's earlier settlement with former shareholder defendants should be considered in this court's apportionment. The plaintiffs in this action received $1 million from the former shareholder defendants. In *Comerica Bank–Detroit v. Allen Industries, Inc.,* 769 F.Supp. 1408 (E.D.Mich.1991), the court applied comparative fault to a CERCLA action settlement. Under § 6 of the Uniform Comparative Fault Act, the plaintiffs' recovery against the non-settling defendants is reduced by the settling defendants' equitable share of fault. Therefore, Detrex claims, before assigning a percentage of fault against Detrex, the court should determine the fault of Detrex, the plaintiffs, and the former shareholders. Detrex has submitted a considerable amount of evidence in this motion and in its previous motion for summary judgment, indicating that the Elkhart Products Corporation employees were responsible for some of the

TCE contamination. Many of the areas where contamination occurred were separate from the delivery area, where Detrex's spills occurred.

For the reasons stated above, the court will not apportion liability in this case. Even if apportionment were applied against Amcast, the court would not apportion the liability of the former shareholder defendants, as the order of November 14, 1990 determined that the former shareholders were not liable. The plaintiffs are entitled to recover their response costs from Detrex.

## 2. Additional Costs

■ Amcast claims that it is entitled to recover all of its response costs, including its attorney fees, against Detrex in light of the court's finding of liability on Count I. As of November 22, 1991, Amcast had incurred $1,197,082.42 in costs which it now seeks to recover. CERCLA provides that private parties may recover "any . . . necessary costs of response incurred . . . consistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(B). Amcast claims that its response costs include expenses incurred in storage, confinement, treatment, transport, and disposal of hazardous waste, and monitoring the effectiveness of the response. *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1154 (9th Cir.1989), discusses the scope of the term "response cost".

> CERCLA does not define the term "response cost." However, in its definitional section, CERCLA does define "response" as "remove, removal, remedy, and remedial action." 42 U.S.C. § 9601(25). These four terms are defined in the two immediately preceding subsections, §§ 9601(23) & (24). Section 9601(23) makes clear that "removal" includes "the cleanup . . . of released hazardous substances from the environment."

(citation omitted). Amcast's response costs include the cost of investigating the release of a hazardous substance, as well as evaluating and producing methods to address the release. 42 U.S.C. §§ 9601(23), (24); *Tanglewood East Homeowners v. Charles–Thomas, Inc.*, 849 F.2d 1568, 1575 (5th Cir.1988); *Cadillac Fairview/California, Inc. v. Dow*

*Chemical Co.*, 840 F.2d 691, 695 (9th Cir. 1988).

### a. Indirect Costs

■ Amcast also contends that in addition to recovering the costs directly related to addressing the TCE contamination, it is entitled to recover such indirect costs as labor expenses and office supplies attributable to its response action. Of the $1,197,082.42 of costs incurred as of November 22, 1991, $55,992.28 constituted indirect employee labor costs.

In *T & E Industries, Inc. v. Safety Light Corp.*, 680 F.Supp. 696, 706–07 (D.N.J.1988), the court found that recoverable costs under 42 U.S.C. § 9601(23) encompassed the value of the time the company president spent in evaluating and mitigating the contamination problem. *See also United States v. R.W. Meyer, Inc.*, 889 F.2d 1497 (6th Cir.1989), *cert. denied*, 494 U.S. 1057, 110 S.Ct. 1527, 108 L.Ed.2d 767 (1990); *and United States v. Hardage*, 733 F.Supp. 1424, 1437 (W.D.Okla.1989) (the government was entitled to recover its indirect response costs).

Detrex contends that employee labor is not a response cost recoverable in a CERCLA action, citing *Artesian Water Co. v. Government of New Castle County*, 659 F.Supp. 1269, 1285–96 (D.Del.1987), *aff'd*, 851 F.2d 643 (3rd Cir.1988), which noted that Congress chose not to provide recovery for income loss. Detrex also cites *In re Hemingway Transport, Inc.*, 126 B.R. 656, 663 (D.Mass.1991), *aff'd*, 954 F.2d 1 (1st Cir. 1992), which stated that CERCLA does not provide recovery for employee time spent in cleanup efforts. The court agrees with Amcast that the indirect costs of employee labor and overhead expenses are recoverable, as such costs are "part and parcel of all costs of the removal action, which are recoverable under CERCLA." *United States v. R.W. Meyer, Inc.*, 889 F.2d at 1503.

### b. Attorney Fees

■ Amcast seeks its attorney fees incurred in connection with its response actions and this cost recovery suit, citing 42 U.S.C. § 9601(25), which states that "[t]he terms 'respond' or 'response' means [sic] remove,

removal, remedy, and remedial action, all such terms (including the terms 'removal' and 'remedial action') include enforcement activities related thereto." In *Pease & Curren Refining, Inc. v. Spectrolab, Inc.*, 744 F.Supp. 945, 951 (C.D.Cal.1990), and in *General Electric Co. v. Litton Business Systems, Inc.*, 715 F.Supp. 949, 959 (W.D.Mo.1989), *aff'd*, 920 F.2d 1415 (8th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1390, 113 L.Ed.2d 446 (1991), the courts determined that attorney fees were recoverable response costs.

Detrex claims that attorney fees are not recoverable response costs. Case law is inconsistent. Several cases have denied attorney fees in private CERCLA actions. *State of New York v. SCA Services, Inc.*, 754 F.Supp. 995, 1000 (S.D.N.Y.1991), stated that the prevailing rule is that attorneys fees are not recoverable in private CERCLA actions and that if Congress had intended to allow recovery of attorney fees it would have so provided. *See also Mesiti v. Microdot, Inc.*, 739 F.Supp. 57, 62 (D.N.H.1990); *Regan v. Cherry Corp.*, 706 F.Supp. 145, 149 (D.R.I. 1989).

In *Pease & Curren Refining, Inc. v. Spectrolab, Inc.*, 744 F.Supp. at 950–51, the court concluded that allowing attorney fees as recoverable response costs would further CERCLA's intent to provide prompt and effective cleanup of waste disposal sites and insure that those responsible for the release of hazardous substances bore the cost of response, citing *Mardan Corp. v. C.G.C. Music, Ltd.*, 804 F.2d 1454, 1455 (9th Cir.1986). *See also General Electric Co. v. Litton Industrial Automation Systems*, 920 F.2d at 1422. In allowing recovery of attorney fees and litigation expenses in a cost recovery action, the court in *Bolin v. Cessna Aircraft Co.*, 759 F.Supp. 692, 710 (D.Kan.1991), stated:

> By providing private parties with a federal cause of action for the recovery of necessary expenses in the cleanup of hazardous wastes, Congress intended § 107 as a powerful incentive for these parties to expend their own funds initially without waiting for the responsible persons to take action.... The court can conceive of no

surer method to defeat this purpose than to require private parties to shoulder the financial burden of the very litigation that is necessary to recover these costs. Thus, to the extent that any litigation costs incurred by the plaintiffs fall within the meaning of the "necessary costs" authorized under § 9607(a)(4)(B), plaintiffs are entitled to recover such costs.

*See also Key Tronic Corp. v. United States*, 766 F.Supp. 865, 871–72 (E.D.Wash.1991). This court finds the *Bolin* court's position persuasive and well-taken. It would defeat the express purpose of CERCLA to require plaintiffs seeking to recover response costs to incur attorney fees in connection with their actions to recover response costs. Enforcement activities recoverable under § 9607 necessarily include attorney fees, and, therefore, Amcast may recover its attorney fees in this action.

### c. Declaratory Relief

Amcast requests a declaratory judgment pursuant to 42 U.S.C. § 9613(g)(2) that Detrex is liable for any future costs it incurs in cleaning up the TCE contamination, claiming that such a judgment is appropriate as to future costs because the court cannot award costs until they are incurred. *United States v. Hardage*, 733 F.Supp. at 1439; *Williams v. Allied Automotive Autolite Division*, 704 F.Supp. 782, 784 (N.D.Ohio 1988); *Rockwell International Corp. v. I U International Corp.*, 702 F.Supp. 1384, 1388 (N.D.Ill.1988).

Detrex claims that Amcast is not entitled to declaratory relief as to the plaintiffs' future response costs because a trial is necessary to determine each party's liability. CERCLA provides for a declaratory judgment on liability for response costs in § 9607 actions. 42 U.S.C. § 9613(g)(2). In *In re Dant & Russell, Inc.*, 951 F.2d at 249–50, the court explained the propriety of declaratory relief as to future response costs in a CERCLA action:

> [Sections 9607 and 9613(g)(2)] envision that, before suing, CERCLA plaintiffs will spend some money responding to an environmental hazard. They can then go to court and obtain reimbursement for their initial outlays, as well as a declaration that

the responsible party will have continuing liability for the cost of finishing the job.

This system strikes a balance between a number of consideration. By requiring a plaintiff to take some positive action before coming to court, CERCLA insures that the dispute will be ripe for judicial review. On the other hand, by not requiring plaintiffs to perform full cleanup before coming to court, and by expressly providing for declaratory judgments, CERCLA substantially reduces the risk involved in performing the cleanup. This encourages private response.

(citation omitted). *See also United States v. Kramer*, 757 F.Supp. at 412.

The court agrees, and concludes that the plaintiffs are entitled to a declaratory judgment as to their future response costs.

### III. CONCLUSION

For the foregoing reasons, the court hereby DENIES the defendants' motion to amend, and GRANTS the plaintiffs' motion for partial summary judgment. In light of the plaintiffs' representation that they will dismiss their common law negligence claim in Count VI and their claim for punitive damages, it appears that no issues remain in this case, and the clerk is directed to enter judgment in accordance with this order and the order of November 18, 1991.

Judgment shall be entered for the plaintiffs on Counts I, II, IV, V, VII, VIII, IX, and XIII of the plaintiffs' complaint in the amount of $1,197,082.42 as response costs incurred as of November 22, 1991, plus attorneys fees, litigation expenses and prejudgment interest in sums to be determined hereafter pursuant to District Rule 43. Interest shall accrue on the amount of the judgment as allowed by law. Declaratory judgment shall be entered for the plaintiffs as to defendant Detrex's liability for all future response costs incurred by plaintiffs in responding to the TCE contamination at plaintiff Elkhart Products' plant in Elkhart, Indiana. The future response costs for which defendant Detrex and its successors or assigns are liable include attorneys fees, litigation and expenses and prejudgment interest.

SO ORDERED.