SANITOY, INC. *vs.* ILCO UNICAN CORPORATION.

Worcester. October 7, 1992. - November 5, 1992.

Present: LIACOS, C.J., NOLAN, LYNCH, & GREANEY, JJ.

*Massachusetts Oil and Hazardous Material Release Prevention Act. Statute*, Construction. *Practice, Civil*, Attorney's fees.

Under § 15 of G. L. c. 21E, the Massachusetts Oil and Hazardous Material Release Prevention Act, a judge was authorized to award a corporate plaintiff its reasonable attorneys' fees and expert witness fees incurred in its successful action under G. L. c. 21E, § 4, to secure reimbursement from a responsible party of the cost of assessment, containment, and removal of contaminants from land on which the plaintiff conducted its business. [630-633]

In a private plaintiff's action under § 4 of G. L. c. 21E, the Massachusetts Oil and Hazardous Material Release Prevention Act, seeking reimbursement of its costs of assessment, containment, and removal of contaminants from certain land ("response costs"), the plaintiff was entitled to an award of the total amount of its reasonable attorneys' fees and expert witness fees under G. L. c. 21E, § 15, and was not limited to a percentage of the fees in proportion to the percentage of response costs recovered. [633-634]

CIVIL ACTION commenced in the Superior Court Department on January 5, 1989.

The case was tried before *Elizabeth Butler*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Robert D. Cox, Jr.*, for the defendant.

*John M. Stevens* for the plaintiff.

NOLAN, J. At issue is the fee shifting provision of § 15 of the Massachusetts Oil and Hazardous Material Release Prevention Act, G. L. c. 21E (1990 ed.) (Act). We consider whether § 15, entitled "Citizen Enforcement," authorizes a trial judge to award attorneys' fees and expert witness fees in

a private party suit for reimbursement brought pursuant to § 4 of the Act.[1] We affirm this portion of the judgment and hold that it does authorize such fees. We also consider whether the judge erred in awarding only a percentage of otherwise reasonable attorneys' fees and expert witness fees to a party entitled to reimbursement under G. L. c. 21E, § 4, based on the percentage of response costs the party recovered. We conclude that the judge erred on this point and reverse that portion of the judgment.

The facts of the underlying action arose from the contamination by hazardous materials and oils of property located on Nursery Lane in Fitchburg. From 1941 until 1968, the defendant, Ilco Unican Corporation (Ilco), owned a portion of the Nursery Lane property. In 1968, Sanitoy, Inc.[2] (Sanitoy), acquired Ilco's portion of the Nursery Lane property, and it has since manufactured toys on the site.

In 1986, Sanitoy discovered that the Nursery Lane property was contaminated by hazardous material and oil. Pursuant to G. L. c. 21E, Sanitoy undertook an assessment and removal of the hazardous material and oil. Sanitoy then brought suit against Ilco pursuant to G. L. c. 21E, § 4, claiming Ilco was liable for the contamination on that portion of the Nursery Lane property which Ilco had previously occupied. Sanitoy sought reimbursement from Ilco for its pro rata share of response costs.[3]

---

[1]General Laws c. 21E, § 4, third par. (1990 ed.), provides in pertinent part: "Any person who undertakes assessment, containment or removal action regarding the release or threat of release of oil or hazardous material shall be entitled to reimbursement from any other person liable for such release or threat of release for the reasonable costs of such assessment, containment and removal."

[2]Sanitoy is a corporation organized and existing under the laws of Delaware with a principal place of business in Fitchburg.

[3]Ilco counterclaimed demanding, rather cryptically, "that th[e] court enter judgment for Ilco against Sanitoy in an amount equal to any judgment or other relief entered against Ilco that is in excess of its equitable, proportionate share, and an amount equal to the past and future response costs incurred or to be incurred by Ilco in connection with the Site."

The jury found that Ilco was responsible for thirty percent of the contamination at the Nursery Lane site and allowed Sanitoy to recover thirty percent of its response costs from Ilco. After trial, both parties moved to recover attorneys' fees and expert witness fees pursuant to G. L. c. 21E, § 15. The judge ruled that "eligibility for costs and attorneys' fees depends upon a party's entitlement to response costs." Thus, the judge denied Ilco's motion for attorneys' fees and expert witness fees because it did not recover response costs and held that Sanitoy is entitled to 30% of its attorneys' fees and expert witness fees as it was entitled to recover 30% of its response costs. Both parties appealed and we took the case on our own motion.[4]

From the preamble to the 1983 act, which breathed life into the Massachusetts effort to clean up hazardous materials and oils, we learn that the purpose of G. L. c. 21E was "to clarify and improve the commonwealth's capability for responding to releases of oil and hazardous material and to recover response costs from persons responsible for releases." St. 1983, c. 7. Under the statutory scheme, clean-up costs "are to be borne by those who are responsible for the release because they own or owned the land or because they caused the spill." *Acme Laundry Co.* v. *Secretary of Envtl. Affairs*, 410 Mass. 760, 764 (1991). The Legislature equipped the Department of Environmental Quality Engineering, now the Department of Environmental Protection (department), "with a number of different means of prodding a responsible party into undertaking cleanup actions." *Id.* One such method is the "department order" whereby the department orders "any person causing or legally responsible" for a re-

---

[4]Ilco appeals from the award of attorneys' and expert witness fees to Sanitoy and Sanitoy appeals from the judge's determination of the fee award. In brief, Ilco raises the additional argument that it is entitled to an award of attorneys' fees and expert witness fees under § 15. While Ilco's notice of appeal did not specify that it was appealing from this part of the judgment, in contravention of Mass. R. A. P. 3 (c), as amended, 378 Mass. 927 (1979), we need not consider the issue given our ultimate disposition on the matter.

lease or the threat of a release to conduct necessary assessment, containment, and removal actions. G. L. c. 21E, § 9 (1990 ed.).

A party that undertakes such remedial action is not necessarily liable for the entire cost of assessment, containment, and removal. Such a party is entitled to reimbursement from other parties in proportion to their relative degrees of contribution to the contamination as a function of the total cost of assessment, containment, and removal. See note 1, *supra.* Indeed, G. L. c. 21E, § 4, "create[d] a private right of action to enforce the purposes of the Act."[5] *Sheehy* v. *Lipton Indus.*, 24 Mass. App. Ct. 188, 197 (1987). Section 4, however, made no provision for the recovery of attorneys' or expert witness fees by parties seeking reimbursement under § 4.

In 1986, the Act was amended to include § 15.[6] St. 1986, c. 554, § 3. Section 15 provides: "In any suit by Massachu-

---

[5]We note in G. L. c. 21E, § 4, a point of departure from the parallel Federal statute, the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9601 et seq. (1988). See *Acme Laundry Co.* v. *Secretary of Envtl. Affairs*, 410 Mass. 760, 769 (1991) (Federal statute in many ways analogous to c. 21E). In G. L. c. 21E, § 4, the private right of action for reimbursement is limited to costs associated with assessment, containment, and removal. In the parallel Federal provision, the private right of action is for "necessary costs of response." 42 U.S.C. § 9607(a)(4)(B). "Response" is defined as "remove, removal, remedy, and remedial action; all such terms (including the terms 'removal' and 'remedial action') include enforcement activities related thereto." 42 U.S.C. § 9601(25).

Given the broader language of the Federal statute, Federal courts are split on the question whether a private party's right to recover "necessary costs of response" includes attorneys' fees. Compare *General Elec. Co.* v. *Litton Indus. Automation Sys., Inc.*, 920 F.2d 1415, 1421-1422 (8th Cir. 1990) (private party can recover attorneys' fees under CERCLA), cert. denied, 499 U.S. 937 (1991), with *In re Hemingway Transp., Inc.*, 126 Bankr. 656, 662-663 (D. Mass. 1991) (attorneys' fees not recoverable), aff'd, 954 F.2d 1 (1st Cir. 1992). Notably, *Litton Indus., supra* at 1422, like *Sheehy* v. *Lipton Indus.*, 24 Mass. App. Ct. 188 (1987), held that a private party action for reimbursement of response costs is an enforcement activity within the meaning of the underlying statute.

[6]As Ilco notes in its brief, an initiative petition which was ultimately approved by the voters inserted § 3A, entitled "Timetables and Specifications for Action at Disposal Sites," § 14, entitled "Public Notice and Participation," and § 15, entitled "Citizen Enforcement," to the statutory

setts residents to enforce the requirements of this chapter, or to abate a hazard related to oil or hazardous materials in the environment, the court may award costs, including reasonable attorney and expert witness fees, to any party other than the commonwealth who advances the purposes of this chapter." The single decision to interpret § 15 is *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 889 F.2d 1146, 1157 (1st Cir. 1989). The *Dedham Water* court, on whose interpretation the judge below relied, stated: "[I]f the district court finds that Dedham Water is entitled to response costs under [G. L. c.] 21E it may award costs and attorney's fees to Dedham Water." *Id.* The judge below in construing and applying the *Dedham Water* court's interpretation of § 15, limited eligibility for a fee award to a party's entitlement to response costs and then awarded a percentage of fees equal to percentage of response costs recovered.

Ilco contends that § 15 does not apply to private parties such as Sanitoy who have incurred assessment, containment, and removal costs and then seek reimbursement of those costs pursuant to G. L. c. 21E, § 4. Ilco argues that § 15 only applies to citizen suits brought pursuant to G. L. c. 214, § 7A (1990 ed.), to enforce c. 21E.[7] We are not persuaded by Ilco's gallant, but in the end unsuccessful, attempt so to characterize the applicability of § 15.

On its face, § 15 is not limited to actions brought pursuant to G. L. c. 214, § 7A. Indeed the section expressly applies to "any suit by Massachusetts residents to enforce the require-

---

framework. St. 1986, c. 554, §§ 2, 3. Statute 1986, c. 554, also amended G. L. c. 21E, § 2.

[7]General Laws c. 214, § 7A (1990 ed.), provides in pertinent part: "The superior court for the county in which damage to the environment is occurring or is about to occur may, upon a civil action in which equitable or declaratory relief is sought in which not less than ten persons domiciled within the commonwealth are joined as plaintiffs . . . determine whether such damage is occurring or is about to occur and may . . . restrain the person causing or about to cause such damage; provided, however, that the damage caused or about to be caused by such person constitutes a violation of a statute, ordinance, by-law or regulation the major purpose of which is to prevent or minimize damage to the environment."

ments of this chapter [21E]." G. L. c. 21E, § 15. Ilco places special emphasis on the title enacted by the people as part of § 15: "Citizen Enforcement." Ilco contends that the title coupled with the term "Massachusetts residents" in the introductory clause of the section leads inexorably to the conclusion that § 15 applies only to citizen suits brought pursuant to G. L. c. 214, § 7A. We disagree.

"The title is in a legal sense a part of the act, and resort may be had to it as an aid in the interpretation of the act." *Commissioner of Corps. & Taxation* v. *Chilton Club*, 318 Mass. 285, 292 (1945). To this end, § 15 is entitled "Citizen Enforcement." In our view, resort to the title supports the construction that a corporate citizen empowered by § 4 of the act, seeking to enforce the provisions of the Act, see *Sheehy* v. *Lipton Indus., supra* at 197, may recover fees pursuant to § 15.

While § 15 applies to suits brought by "Massachusetts residents," it cannot be interpreted logically to preclude an award of fees if only one resident, as in the present case, brings suit. Such a conclusion would diminish the role that a single party must play in resolving the hazardous waste disposal problem in Massachusetts by denying it fees and awarding them to a plaintiff "class" comprised of multiple Massachusetts residents.[8]

Ilco next contends that Sanitoy has not "enforce[d] the requirements of the chapter," or congruently, has not "advance[d] the purposes of this chapter" by its action taken pursuant to § 4 of the Act. See G. L. c. 21E, § 15. We reject these arguments and hold, as did the Appeals Court in *Sheehy* v. *Lipton Indus., supra* at 197, that any person who undertakes assessment, containment, or removal activities as defined in the Act, and subsequently seeks reimbursement pursuant to G. L. c. 21E, § 4, enforces and advances the purposes of the Act. A contrary conclusion would render nuga-

---

[8]We note that § 15 applies only to "Massachusetts residents" and realize that in certain foreseeable cases it may run afoul of certain constitutional protections. As this aspect of the statute is not now before us, we reserve further comment for another day.

tory the cost allocation provisions of the Act and insulate potentially responsible parties from liability where the cost of litigation exceeds the cost of assessment, containment, or removal. See *General Elec. Co.* v. *Litton Indus. Automation Sys., Inc.*, 920 F.2d 1415, 1422 (8th Cir. 1990), cert. denied, 499 U.S. 937 (1991).

We briefly address one final argument that Ilco raises. In 1992, the Legislature amended c. 21E. See, e.g., St. 1992, c. 133, §§ 271-313. The amendments, among other things, authorize the award of attorneys' fees and litigation costs in private party actions brought under G. L. c. 21E, § 4, in certain circumstances. St. 1992, c. 133, §§ 293, 294 (prospective in their application). Ilco contends that the amendments, which left § 15 unchanged, demonstrate that § 15 was never intended to apply to private party actions. We reject this argument. "What the . . . legislation involved in this case means cannot rationally be influenced by [subsequent] legislation." *Massachusetts Wholesalers of Malt Beverages, Inc.* v. *Attorney Gen.*, 409 Mass. 336, 344 (1991), quoting *Coca Cola Bottling Co.* v. *Commissioner of Revenue*, 393 Mass. 726, 729 n.3 (1985).

In its cross appeal, Sanitoy contends that the judge erred in failing to award the full amount of its attorneys' fees and expert witness fees. Sanitoy contends that the judge erred in linking the fee award to the percentage of "response" costs recovered. We agree and reverse this portion of the judgment.

On this issue the statute provides that "the court may award costs, including reasonable attorney and expert witness fees, to any party . . . who advances the purposes of this chapter." G. L. c. 21E, § 15. In fixing the amount of the fee award, the trial judge first concluded that all of Sanitoy's attorneys' fees and expert witness fees were reasonable but then reduced the fee award to 30% of this total to reflect the percentage of "response" costs Sanitoy recovered from Ilco.

We have held generally that the amount of a reasonable fee award rests largely in the sound discretion of the trial judge. *Linthicum* v. *Archambault*, 379 Mass. 381, 388

(1979). In making a determination of reasonableness, we have said that the judge "should consider the nature of the case and the issues presented, the time and labor required, the amount of the damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases." *Id.* at 388-389.

It is clear that the judge considered these factors in assessing the "reasonableness" of the attorneys' fees and expert witness fees that Sanitoy incurred. In her memorandum of decision, the judge provided, "Sanitoy's submissions as to its attorneys' fees and experts' fees document in painstaking detail the time expended. I find that the fees, although substantial, are not unreasonable, given the nature of the case." The judge also wrote in deciding the cross motions for fees: "In effect, Ilco has conceded the reasonableness of Sanitoy's attorneys' fees by the submission of its own fees which are comparable. Moreover, the fact that [Ilco's] expert witness' costs were three times as high as those of [Sanitoy] demonstrates the reasonableness of Sanitoy's claim for expert fees . . . ."

On this basis, we conclude that the judge erred in awarding Sanitoy only a percentage of its reasonable fees. Sanitoy is entitled to recover the full amount of its reasonable attorneys' fees and expert witness fees as previously determined by the judge. Accordingly, we affirm in part, reverse in part, and remand the case to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*