MAILMAN'S STEAM CARPET CLEANING CORP. *vs.* ALFRED
C. LIZOTTE & another.[1]

Worcester. April 6, 1993. - July 19, 1993.

Present: LIACOS, C.J., WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Massachusetts Oil and Hazardous Material Release Prevention Act.*
*Damages*, Breach of warranty, Hazardous waste contamination, Deceit,
Future damages.

In an action for breach of warranty brought by the purchaser of certain
 property later found to be contaminated by leakage from underground
 oil tanks that had been warranted to be sound, a reasonable measure of
 damages was the cost of restoring the property to its warranted condi-
 tion, where such rehabilitation was not physically impossible and the
 cost was not disproportionate to the value of the property. [868-869]
Evidence at the trial of civil claims supported the damages awarded by the
 jury for breach of warranty. [869-870]
In the circumstances of an action asserting claims for breach of warranty,
 misrepresentation and liability under G. L. c. 21E for damage to prop-
 erty caused by oil contamination, the jury's separate verdicts awarding
 damages on the claims for misrepresentation and liability under the
 statute were duplicative of the award for breach of warranty, and, as
 such, were to be vacated. [870-872]
In a cross-claim for indemnification for cleanup costs under G. L. c. 21E,
 § 4, the party seeking recovery was entitled to reimbursement only of
 cleanup costs previously incurred, and not future expenses. [872-874]
Equitable allocation, according to common law principle of contribution, of
 cleanup costs awarded pursuant to an action under G. L. c. 21E was
 not appropriate where the jury verdict indicated that only one of the
 two defendants was responsible for the statutory damages. [874-875]

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 20, 1988.

---

[1]Bolster Oil Co., Inc. *The plaintiff's claim against Bolster was settled*
*during the pendency of this appeal and is not before us.* Lizotte filed a
cross-claim against Bolster for indemnification.

The case was tried before *Elbert Tuttle*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Jack R. Pirozzolo* (*Richard Binder & Richard Bennett* with him) for Alfred C. Lizotte.

*John F. Bohman* for Bolster Oil Co., Inc.

*Gary LeBlanc* for the plaintiff.

GREANEY, J. This is an appeal from judgments awarding damages due to oil contamination of a parcel of property. The plaintiff, Mailman's Steam Carpet Cleaning Corp. (Mailman), purchased the property for $63,000 from the defendant, Alfred C. Lizotte (Lizotte), in 1985. Located on the property were eleven underground oil tanks. A previous owner, Bolster Oil Company, Inc. (Bolster), had operated a service station and fuel oil business on the property from 1945 through 1984. In connection with Mailman's purchase of the property, Lizotte promised Mailman that the underground tanks were in proper working order and free of leaks and spillage. Lizotte also signed a warranty which guaranteed that the tanks would be free from leakage for ten years. On learning that the property was indeed contaminated due to leakage from the tanks, Mailman notified the Department of Environmental Protection (DEP). Although the DEP had not yet ordered cleanup of the property, Mailman commenced this action against Lizotte asserting common law claims for damages as well as liability for cleanup costs under G. L. c. 21E (1990 ed.), the Massachusetts Oil and Hazardous Material Release Prevention Act (Act).[2] Lizotte brought a cross-claim against Bolster which asserted that

---

[2] Mailman also brought a claim against Lizotte for damages under G. L. c. 93A, and a claim of misrepresentation against the agent who represented Lizotte in the sale of the property. The jury found in favor of Lizotte and the agent on these claims and Mailman has not appealed. Mailman brought additional claims under G. L. c. 21E against Bolster and other parties. Apparently due to settlement agreements, none of the claims and cross-claims involving these parties, other than Lizotte's cross-claim against Bolster, are involved in this appeal.

Bolster had caused the contamination and was therefore responsible for any cleanup costs.

In response to special questions on liability and damages, the jury found Lizotte liable on three separate counts and awarded Mailman damages for breach of warranty ($225,000), misrepresentation ($31,500), and for liability under G. L. c. 21E ($20,000). On Lizotte's cross-claim against Bolster, the jury awarded Lizotte $20,000, the amount of Lizotte's liability to Mailman under G. L. c. 21E. Lizotte appeals from the denial of his motions for a new trial and for remittitur, arguing that the damages awarded to Mailman were both excessive as a matter of law and duplicative. Bolster appeals, claiming that the award to Lizotte exceeds the sum permitted by G. L. c. 21E, § 4, because $20,000 in reimbursable costs had not been expended. These appeals have been consolidated, and we transferred them to this court on our own motion. We conclude that damages awarded to Mailman for misrepresentation and liability under G. L. c. 21E are duplicative of damages awarded for breach of warranty. The award for breach of warranty is not otherwise excessive and is affirmed. We further conclude that Bolster's liability to Lizotte under G. L. c. 21E, § 4, is limited to costs previously incurred which qualify for reimbursement under the statute.

The following evidence was presented to support Mailman's claim for damages. At the time of trial in October, 1990, the property would have had a fair market value of $125,000 if it had not been contaminated. Because of the oil contamination, the property had little or no value on the resale market, but retained some value on the rental market (Mailman received $800 a month rental income from a tenant). Mailman paid $24,250.50, and presented estimates totalling an additional $18,600, for expenses related to removal of the tanks. As for cleanup of the contamination, Mailman expended $9,000 for environmental site assessments of the property, but actual cleanup had not commenced prior to trial. Based on the degree of contamination and the fact that the contamination extended over the entire site, an expert ge-

ologist estimated that restoration of the property, including the soil and groundwater within the site, could be done through an on-site process which would cost between $150,000 and $200,000.

1. *Damages for breach of warranty.* Lizotte claims that damages of $225,000 awarded for breach of warranty are excessive as matter of law because recovery for breach of warranty is limited to the diminution in the market value of the property, $125,000. According to Lizotte, Mailman may recover the cost of cleanup which exceeds the value of the property only when Mailman becomes liable to the Commonwealth for such costs or when Mailman has made expenditures for cleanup required under G. L. c. 21E. In essence, Lizotte argues that Mailman's common law claim for recovery is limited to the diminution in the market value of the property which would be supplemented by any additional recovery permitted by G. L. c. 21E.

We first consider the argument that damages for breach of warranty are limited to the diminution in the market value of the property. To support this claim, Lizotte points to several tort cases which state that, as a general rule, diminution in market value is the appropriate measure of damages for tortious injury to property. Even if we were dealing here with a tort, rather than with a breach of warranty (a breach of contract), we have recognized that this general rule is not "a universal test," especially where "diminution in market value is unavailable or unsatisfactory as a measure of damages." *Trinity Church in the City of Boston* v. *John Hancock Mut. Life Ins. Co.*, 399 Mass. 43, 48-49 (1987). See *Puerto Rico* v. *SS Zoe Colocotroni*, 628 F.2d 652, 657 (1st Cir. 1980), cert. denied, 450 U.S. 912 (1981) (cost of restoring area affected by an oil spill). When property has been damaged by oil or hazardous waste and the cost of restoration exceeds the value of the property, diminution in market value is not always a satisfactory measure of tort damages. In appropriate cases, a test of reasonableness may be imposed to determine if restoration of the property is a fair and reasonable remedy in the circumstances. See *Trinity Church, supra* at 50. See

also *Puerto Rico* v. *SS Zoe Colocotroni, supra* at 675
("There may be circumstances where direct restoration of
the affected area is either physically impossible or so dispro-
portionately expensive that it would not be reasonable to un-
dertake such a remedy").

Although these principles of tort damages are instructive,
we are presented here with a breach of contract. "The estab-
lished principle of law upon which damages for breach of
contract may be assessed is that the injured party shall be
placed in the same position he would have been in if the con-
tract had been performed, so far as the loss may be ascer-
tained to have followed as a natural consequence of the
breach and to have been within the contemplation of the par-
ties as reasonable men as a probable result of the breach."
*Abrams* v. *Reynolds Metals Co.*, 340 Mass. 704, 708 (1960).
*John Hetherington & Sons, Ltd.* v. *William Firth Co.*, 210
Mass. 8, 21 (1911). M. Perlin, Mottla's Proof of Cases in
Massachusetts § 14.8 (3d ed. 1992). See *Anthony's Pier
Four, Inc.* v. *HBC Assocs.*, 411 Mass. 451, 485 (1991). The
contamination of Mailman's property caused by leaks in the
oil tanks was clearly the natural consequence of the breach
of warranty. Lizotte could reasonably have contemplated
that he would be liable to Mailman for all costs related to
cleanup of the oil leakage as a probable result of the breach
and that these costs would likely exceed the fair market
value of the property. In this case, rehabilitation of the prop-
erty is not physically impossible and the cost of cleanup is
not disproportionate relative to the value of the property.
Thus, even under the reasonableness test described above,
the cost of restoring the property to its warranted condition
is an appropriate measure of damages.

Lizotte contends that Mailman has not suffered any com-
pensable injury because Mailman has not yet incurred liabil-
ity for cleanup under G. L. c. 21E, and recovery for any po-
tential liability is premature and speculative. Lizotte
misconstrues the basis for Mailman's recovery under the
warranty. The damage suffered by Mailman due to breach of
warranty is not potential liability under G. L. c. 21E (al-

though potential liability does exist); the damage is the oil contamination of Mailman's property. Lizotte's common law liability to Mailman is not dependent upon either actual or potential liability under G. L. c. 21E. Furthermore, nothing in G. L. c. 21E implies that the statute, the purpose of which is to provide a means "to compel the prompt and efficient cleanup of hazardous material" by imposing strict liability on designated parties, preempts any common law remedies. *Sheehy* v. *Lipton Indus., Inc.*, 24 Mass. App. Ct. 188, 197 (1987). Because the evidence supports the damages awarded by the jury for breach of warranty, this award is affirmed.

2. *Duplicative damages.* Lizotte claims that there was error in the entry of separate damage verdicts under the multiple counts of breach of warranty, misrepresentation and liability under G. L. c. 21E, because the verdicts under the latter two counts duplicate the damages awarded for breach of warranty. Recovery of duplicative damages under multiple counts of a complaint is not allowed. *Calimlim* v. *Foreign Car Ctr., Inc.*, 392 Mass. 228, 235 (1984). In this case, each separate damage verdict was determined by the jury in response to special questions. Mass. R. Civ. P. 49 (a), 365 Mass. 812 (1974). The jury were first asked to determine whether Lizotte was liable on each separate count. If Lizotte was found to be liable, the jury were then asked to separately determine the damages suffered by Mailman as a result. The judge did not warn the jury against duplicating any recoveries. The jury verdicts must therefore be viewed in light of the judge's instructions regarding damages on each separate count. See *Solimene* v. *B. Grauel & Co., KG*, 399 Mass. 790, 800 (1987). We presume that the jury followed the judge's instructions. *O'Connor* v. *Raymark Indus., Inc.*, 401 Mass. 586, 590 (1988). *Saragan* v. *Bousquet*, 322 Mass. 14, 20 (1947).

With regard to damages for breach of warranty, the judge instructed the jury to award all costs necessary to correct the damage caused by leakage, including the entire cost to clean up the oil contamination, the entire cost of removing the tanks, and "any other ancillary necessary expense thereto."

With regard to damages for misrepresentation, the judge instructed the jury to award the diminution in the market value of the property, which he defined as the difference between the price Mailman paid and the actual market value of the property acquired.[3] The judge instructed the jury not to include the cost of cleanup in damages for misrepresentation.

While at first glance it may not appear that misrepresentation damages of $31,500 duplicate a portion of the damages awarded for breach of warranty, further analysis demonstrates that these damages are indeed duplicative. The evidence established that, but for the oil contamination, the fair market value of the property would have been $125,000. There was no evidence that the value of the property after cleanup would be less than the appraised value of $125,000 merely because the property had previously been contaminated. The jury were instructed to include in breach of warranty damages all costs necessary to clean the property. Once Mailman uses the $225,000 awarded for breach of warranty to restore the property to its predamage condition, the net diminution in the value of the property will be $0, thus rendering damages awarded for misrepresentation duplicative. Furthermore, since it is conceivable that Mailman may not expend the $225,000 awarded for breach of warranty to clean the property, it would be inequitable to allow Mailman to recover the full cost of cleanup as well as the diminution in the market value of the property simply because Mailman has not acted to rehabilitate the property.

The question whether damages for G. L. c. 21E liability duplicate breach of warranty damages is easily resolved. The judge instructed the jury to include in G. L. c. 21E damages only the cost of cleanup for leakage which occurred during the ten-month period that Lizotte owned the property (and not the cost of cleanup for leakage which occurred during the

---

[3]No objection was raised by either Lizotte or Mailman to this instruction and we therefore do not consider whether the instruction was correct as a matter of law. See Mass. R. Civ. P. 51 (b), 365 Mass. 816 (1974).

almost forty years that Bolster owned the property).[4] During deliberations, the jury questioned where the cost of any cleanup should be applied, in the special question concerning breach of warranty damages or in the special question concerning damages under G. L. c. 21E. The judge answered that "similar" amounts should be included in the answers to these questions, but that damages under G. L. c. 21E should include only the cost to clean any oil which escaped during the period Lizotte owned the property and should not include the cost to remove the tanks,[5] while breach of warranty damages should include the entire cost of cleanup as well as the cost to remove the tanks. It is therefore obvious that the partial cleanup costs awarded as G. L. c. 21E damages duplicate breach of warranty damages.

3. *Recovery under G. L. c. 21E.* At trial, Bolster and Lizotte both maintained that Mailman could recover costs previously paid in his claim under G. L. c. 21E, but that he could not recover future, not-yet-incurred, cleanup costs under the statute. In the context of this appeal, this issue is relevant only with regard to Lizotte's cross-claim against Bolster because, as discussed above, Lizotte is liable to Mailman for future cleanup costs under common law theories of recovery. Bolster's liability to Lizotte, however, is limited to the amount properly recoverable under G. L. c. 21E.[6]

---

[4]Both Lizotte and Bolster objected to the judge's instruction concerning damages under G. L. c. 21E claiming that recovery is limited to costs previously paid by Mailman. We discuss this objection in the next section of this opinion. Lizotte also argues in his brief that he is not a party liable under G. L. c. 21E, § 5. Lizotte did not raise this issue in the Superior Court and may not raise it for the first time on appeal. See *Commissioner of Correction* v. *McCabe*, 410 Mass. 847, 850 n.7 (1991). In any event, even if Lizotte prevailed on this issue, his liability to Mailman would remain the same because he is clearly liable for breach of warranty.

[5]None of the parties objected to the instruction that cleanup costs under G. L. c. 21E do not include the cost to remove the tanks and we therefore do not consider whether this instruction was correct as a matter of law. See Mass. R. Civ. P. 51 (b), 365 Mass. 816 (1974).

[6]In his pleadings and at trial, Lizotte did not raise any common law theories of recovery against Bolster. Bolster's liability on the cross-claim is

Bolster argues that the judge erred in instructing the jury to include future costs of cleanup in damages awarded to Lizotte under his cross-claim, rather than limiting damages to the sum previously expended for cleanup (including assessment, containment and removal). The judge relied on G. L. c. 21E, § 5 (*a*) (5) (iii) (1990 ed.), which states that the liability of the five classes of persons described in § 5 (a),[7] who are responsible for cleanup, extends by subsection (5) (iii) "to any person for damage to his real or personal property incurred or suffered as a result of such release or threat of release." The judge interpreted this language to mean that Mailman, as the owner of real property damaged by the release of oil, was entitled to recover all costs of cleanup under the statute. In keeping with this interpretation, the judge essentially instructed the jury to include costs not yet incurred by Mailman in damages under Lizotte's cross-claim against Bolster.

The judge's application of § 5 (*a*) (5) (iii) was erroneous in the circumstances of this case. Section 4 of G. L. c. 21E (1990 ed.), and not § 5, governs private party actions by persons who are strictly liable for cleanup under § 5 for recov-

---

therefore founded only on statutory liability under G. L. c. 21E. Neither Lizotte nor Bolster argues to the contrary.

[7]General Laws c. 21E, § 5 (*a*) (1990 ed.), in effect at the relevant times, states in pertinent part:

"Except as otherwise provided in this section, (1) the owner or operator of a vessel or a site from or at which there is or has been a release or threat of release of oil or hazardous material; (2) any person who at the time of storage or disposal of any hazardous material owned or operated any site at or upon which such hazardous material was stored or disposed of and from which there is or has been a release or threat of release of hazardous material; (3) any person who by contract, agreement, or otherwise, directly or indirectly, arranged for the transport, disposal, storage or treatment of hazardous material to or in a site or vessel from or at which there is or has been a release or threat of release of hazardous material; (4) any person who, directly, or indirectly, transported any hazardous material to transport, disposal, storage or treatment vessels or sites from or at which there is or has been a release or threat of release of such material; and (5) any person who otherwise caused or is legally responsible for a release or threat of release of oil or hazardous material from a vessel or site, shall be liable, without regard to fault . . . . "

ery from others who are also strictly liable. See *Sheehy* v. *Lipton, supra* at 197. The third paragraph of § 4 provides that "[a]ny person who undertakes assessment, containment or removal action regarding the release or threat of release of oil or hazardous material shall be entitled to *reimbursement* from *any other person liable* for such release or threat of release for the reasonable costs of such assessment, containment and removal" (emphasis supplied). This section contemplates that a person who is responsible for cleanup, such as Mailman, may independently commence cleanup and then bring an action to seek recovery from others who are also liable. Such an action, however, is limited to reimbursement of cleanup costs already paid by the party seeking recovery. *Oliveira* v. *Pereira*, 414 Mass. 66, 73-74 (1992) (a prerequisite for an action for reimbursement under G. L. c. 21E is that the sum sought to be recovered have been paid).[8] Given that recovery under § 4 is limited to reimbursement of costs previously paid and the jury award to Lizotte under c. 21E did not include the cost to remove the tanks (see note 5, *supra*), Lizotte's recovery from Bolster is limited to the cost of the environmental site assessments performed in connection with cleanup of the property, $9,000.

Bolster claims that any recovery under G. L. c. 21E should be equitably divided among those with joint and several liability according to common law principles of contribution. Because neither Mailman, Lizotte nor Bolster was aware of the contamination when Mailman purchased the property, Bolster argues that G. L. c. 21E damages should be divided pro rata between the parties. Bolster ignores the fact that the jury, by awarding Lizotte the full measure of his liability

---

[8]In July, 1992, the Legislature enacted significant additions to, and alterations of, the Act. See, e.g., St. 1992, c. 133, §§ 293-299. Among them was the addition of G. L. c. 21E, § 4A, which provides detailed procedures by which a private party who is liable under § 5, and intends to undertake a future cleanup action, may obtain contribution before commencing cleanup from others also liable. Prior to the addition of this section, a private party was limited to bringing an action for reimbursement of cleanup costs under § 4.

under G. L. c. 21E in his cross-claim against Bolster, essentially found that Bolster alone had caused the contamination and was therefore the only party equitably responsible for statutory damages. This conclusion was supported by the evidence which showed that neither Mailman nor Lizotte ever made use of the underground oil tanks.

4. *Disposition.* The judgment on Mailman's complaint, entered on October 10, 1990, is affirmed as to its entry concerning count I (breach of warranty). The entries on counts II and V (misrepresentation and Lizotte's liability to Mailman under G. L. c. 21E) are vacated. The judgment on Lizotte's cross-claim against Bolster, entered on October 10, 1990, is amended to reduce the judgment to $9,000 in damages plus interest from June 20, 1988. The cases are remanded to the Superior Court for entry of the judgments as modified.

*So ordered.*