Brady, J.
BACKGROUND
In 1986 the plaintiffs, trustees of Martignetti Brothers Realiy Trust, learned that the property owned by them at 205 Concord Turnpike, Cambridge, was contaminated by hazardous materials. They promptly notified the Massachusetts DEQE and later incurred substantial response costs to assess the extent of the contamination and to develop a plan to remove it. In November 1989, the plaintiffs commenced this action under G.L.c. 21E, §4 against the defendants and other parties liable for further contamination for reimbursement of their response costs.[1]
The case was tried to a jury in April 1994. The jury’s answers to special verdict questions determined that a release occurred from or at the site during or after the time in which defendant Charles Farr operated a furniture stripping business thereon, that defendant Haigh-Farr, Inc., was an “operator” of the furniture stripping business at the relevant time, and that the plaintiffs’ reasonable response costs as a result of the release(s) were $385,698.60. The jury also determined that the plaintiffs were negligent with respect to their care and maintenance of the underground storage tank on the site, and that the plaintiffs’ negligence was a cause of the release(s) of the hazardous materials from the tank. Finally, the jury determined that the equitable share of the response costs that each party should be required to pay was: plaintiffs, 30%; Haigh-Farr, Inc., 35%; and Charles Farr, 35%.
*278 The parties, prior to the entry of judgment, bring the following motions: (1) plaintiffs’ motion for declaratory relief, (2) plaintiffs’ motion for entry of judgment, (3) plaintiffs’ motion to award costs and fees, and (4) defendant Haigh-Farr, Inc.’s motion for judgment notwithstanding the verdict. Haigh-Farr’s counsel, recognizing at oral argument on May 27, 1994 that the motion for judgment notwithstanding the verdict was premature, has waived it.
Further facts relevant to the motions are as follows. The property consists of land and a building adjacent to properly owned by Arthur D. Little, Inc. in Cambridge. The plaintiffs purchased it in May 1982 from the Concord Turnpike Realty Trust, the principals of which were the so-called elder generation of Marügnettis, namely the plaintiffs’ father and two of his brothers.
Charles Farr first occupied part of the subject building as a tenant of Concord Turnpike Realty Trust in 1973, at which time he began to operate his furniture stripping business. Mr. Farr had been recently laid off from his job at American Airlines, and was searching for a business venture. His brother, George Farr, was a principal of Haigh-Farr, Inc., a Massachusetts corporation whose primary business was manufacturing antennae for space satellites. In 1973, Haigh-Farr helped Charles Farr get started in this business by loaning him money, assisting him in obtaining credit, handling his gross receipts, paying bills, keeping books for him, and various other matters. Although the relationship between Charles Farr and Haigh-Farr was complicated, there was sufficient evidence for the jury-to conclude that Haigh-Farr was an operator of the furniture stripping business under G.L.c. 21E, §2, because it had the authority to control the disposition of the hazardous materials on site.
Charles Farr conducted a furniture stripping business on the premises until evicted by plaintiffs in June 1986. The furniture stripping process involved dousing the furniture with chemicals and then rinsing the chemicals off with water. The resulting fluid mixture would follow the tilt of the floor to a drain which led into a large concrete underground storage tank. The chemicals used were hazardous materials under c. 21E, which was enacted in 1983. Periodically, Mr. Farr would have a contractor remove and dispose of the liquid and sludge which accumulated in the tank. Some of the fluid mixture may also have gone into a depression (sump) near the drain and then directly into the soil underneath.
The plaintiffs discovered the contamination in 1986 in connection with a c. 21E investigation prior to a proposed land swap with their neighbor, Arthur D. Little, Inc. According to plaintiffs’ expert witnesses at trial, the hazardous materials found in the soil and groundwater came from the tank area, i.e. the tank and the nearby sump. Although the experts were not specific, the jury could have concluded that some of the contamination which was released into the environment came from a leak(s) in the underground storage tank.[2]
There was little question that Charles Farr was a person liable under G.L.c. 21E, §5(a)(2).[3] At the trial he vigorously challenged the reasonableness of the response costs and argued that the plaintiffs themselves were at least partially responsible for the releases for failing adequately to maintain the underground storage tank from which the hazardous materials escaped.
Haigh-Fanr’s main defense was that it was not an operator of Charles Farr’s furniture stripping business because it never had any right or ability to control Farr’s use or disposal of hazardous materials. It argued that its involvement in the furniture stripping business was purely out of familial affection rather than as a hopeful sharer of anticipated profits; and that it had no authority to control Charles Farr’s waste disposal practices. The jury, upon sufficient evidence, concluded otherwise.
JOINT AND SEVERAL LIABILITY
The plaintiffs argue that the court should enter judgment that the defendants are jointly and severally liable for 100% of plaintiffs’ response costs.[4] Alternatively, the plaintiffs urge that judgment should enter that defendants are jointly and severally liable for 70% of the response costs. The defendants, on the other hand, argue that the court should enter a separate judgment against each defendant in the amount of 35% of the response costs, i.e. their pro rata share as determined by the jury. For the reasons set forth herein, I agree with defendants.
The plaintiffs rely heavily on several CERCLA (42 U.S.C. §9601 etseq.) cases arguably favoring joint and several liability in government and private parly actions where, as here, the harm to the property is indivisible. They also argue that c. 2 IE, §5(a)’s express provision for joint and several liability should be read into §4 actions. As I read plaintiffs’ cited CERCLA cases, they generally do not support joint and several liability in a case like this. In any event, as I construe c. 21E, §4, several, not joint, liability is contemplated.
CERCLA cases in which a government seeks to impose joint and several liability on private party defendants are not in point. O’Neil v. Picillo, 883 F.2d 176 (1st Cir. 1989), for instance, was an action by the State of Rhode Island to recover cleanup costs from numerous defendants for a contaminated site. Id. at 178. Some of the contributing defendants argued that their contributions to the contamination were insubstantial, hence they should not be held jointly and severally liable. Id. at 178. The court held that damages should be apportioned only if a defendant could demonstrate that the harm was divisible. Id. at 178. Compare G.L.c. 21E, §5(c). But as pointed out in Environmental Transp. Systems, Inc. v. Ensco, Inc., 969 F.2d 503, 508 (7th Cir. 1992), such cases are only relevant in terms of divisibility for the defendant “seeking to avoid joint and several liability as opposed to apportionment in terms of contribution.” The seventh circuit pointed out the difficulty with “reasoning from cases whose joint and several liability rationale is really very different from the context of a contribution action. *279 There can be no right to contribution unless there is joint and several liability . . .” Id., at 508. See also U.S. v. Kramer, 757 F.Supp. 397, 415 (D.N.J. 1991); City of New York v. Exxon, 766 F.Supp. 177, 198 (S.D.N.Y. 1991).
With respect to private party actions under CERCLA, the courts have taken different approaches to the joint and several liability question. Under CERCLA, a private party who has incurred response costs may sue other potentially responsible parties under either 42 U.S.C. §9607 (cost recovery) or 42 U.S.C. §9613(f) (contribution). Under the latter, the court will allocate response costs among the parties using equitable factors. In Barton Solvents, Inc. v. Southwest Petro-Chem, Inc., 38 ERC 1022 (D.Kan. 1993), the court drew a sharp distinction between a §9607 private party cost recovery action, in which liability was joint and several, and an action for contribution under §9613(f). Ihe court recognized that if the action were solely in the nature of one for contribution, plaintiffs recovery would not be joint and several but only for a defendant’s equitable share of the cleanup costs. Id. at 1025. Accord, U.S. v. Conservation Chemical Co., 619 F.Supp. 162, 229 (D.C. Mo. 1985) (held, nojoint and several liability between PRP’s in third-party claim; claim was in the nature of contribution which implies several, not joint, liability). See also Amcast Indus. Corp. v. Detrex Corp., 822 F.Supp. 545, 549-53 (N.D. Ind. 1992) (court will consider equitable apportionment factors only in a Section 9613 action, not in a Section 9607 cost recovery action).
Other courts do not draw such distinction and treat private party actions as if they were brought pursuant to §9613(f). Thus in Amoco Oil Co. v. Borden, Inc., 889 F.2d 664 (5th Cir. 1989), a case brought under §9607, the court noted: “(W]hen one liable party sues another to recover its equitable share of the response costs, the action is one for contribution, which is specifically recognized under CERCLA. See §9613(f). Under that provision, a court has considerable latitude in determining each party’s equitable share.” Amoco Oil Co. v. Borden Inc., supra at 672.
Finally, some private party cases decided under CERCLA leave it to the court’s discretion as to whether to impose joint and several liability among persons liable. See Allied Corp. v. Acme Solvents Reclaiming, Inc., 691 F.Supp. 1100, 1116-18 (N.D.Ill. 1988); Amcast Industrial Corp. v. Detrex Corp., 822 F.Supp. 545, 549-53 (N.D. Ind. 1992) (imposition of joint and several liability permissive, not mandatory). If an appellate court here were to determine that I have discretion whether to impose joint and several liability on the defendants, I would not impose it. The jury’s allocation of responsibility for the contamination seems sensible; there is little to distinguish between a tenant who actively employs hazardous materials and a landlord who supplies methods of disposal which are not suitable. Furthermore, I do not regard the defendants as so closely related that it would be appropriate to impose joint and several liability. If one of the defendants is unable to pay his share, the fair resolution is to distribute that defendant’s amount between the solvent parties in accordance with their equitable share percentages. Such is the common law of this state. See Carey v. Holmes, 82 Mass. 127 (1860). If both defendants are unable to pay, the issue is academic.
But however one interprets the many CERCLA cases on the subject of joint and several liability, the issue comes down to a construction of c. 21E. This case was tried under the statute as it stood prior to the 1992 amendments (St. 1992, c. 133, §§291-293). In general, a plaintiffs c. 21E claim fell either within Section 5(a) (i-iii) or Section 4. Under §5(a)(i-iii), the parties entitled to bring a claim were the Commonwealth, for response costs incurred by it (§5(a) (i)) and for damages or loss of natural resources (§5(a)(ii)), and private parties who sustained damage to their real or personal property (§5(a)(iii)). Liability for such claims was expressly joint and several. Thus, if the Commonwealth had incurred response costs for the subject property, it could have brought suit against the three parties to this case under §5(a) (i), whose liability would have been joint and several.
A Section 4 claim, on the other hand, can be brought by “any person” who undertook response action to recover his reasonable response costs. Section 4 claims are for indemnity or contribution for funds already expended. Hays v. Mobil Oil Corp., 736 F.Supp. 387, 391-92 (D.Mass. 1990); Oliveira v. Pereira, 414 Mass. 66, 72 (1992). Such a claim by a private party who is presumably status liable to the Commonwealth for response costs is akin to an action for contribution under 42 U.S.C. §9613(f). Section 4 does not contain language imposing joint and several liability upon defendants; rather liability among the parties is imposed on a “pro rata" basis.
The relevant text of Section 4 prior to the 1992 amendment was as follows:
Any person who undertakes assessment, containment, or removal action regarding the release or threat of release of oil or hazardous material shall be entitled to reimbursement from any other person liable for such release or threat of release for the reasonable costs of such assessment, containment and removal. If such release resulted from the negligence of two or more persons each shall be liable, to the others for his pro rata share of the costs of assessment, containment and removal
(Emphasis added.)
The 1992 amendment revised the emphasized sentence to read: “If two or more persons are liable pursuant to Section 5 for such release or threat of release, each shall be liable to others for their equitable share of the costs of such response action.” The revised sentence is clear; the pre-amendment version which applies to this case is ambiguous and requires interpretation.
*280 The plaintiffs, because they do not want recovery reduced due to their own contribution to the contamination and seek to obtain a joint and several judgment against defendants, resist the application of the second sentence on the ground that the case does not involve the “negligence of two or more persons.” They argue that one person’s negligence does not trigger the cited provision; and that the sentence must be construed to include only the negligence of defendants and not plaintiffs.
The ambiguity in the statute arises from the use of the word “negligence.” Because liability under c. 21E does not depend on a finding of negligence, it is difficult to envision the core situation to which this sentence would apply. If, for instance, two status liable defendants were sued by a plaintiff for reimbursement under §4, must a defendant seeking to invoke this provision demonstrate that he and the other defendant were both negligent? It would be an unusual statute that would require a party to prove his own negligence in order to come within its protection.
Furthermore, what becomes of the plaintiff who may have contributed to the contamination? An action under §4 presupposes that the plaintiff is status liable under c. 21E §5(a) and for that reason has incurred response costs for which he seeks reimbursement. Oliveira v. Pereira, 414 Mass. 66, 72 (1992). Since the statute speaks in terms of two or more persons liable, it includes plaintiffs; but since the plaintiffs case against defendants is not premised on negligence but on status liability, does it fall to the defendant to prove that he and the plaintiff were negligent?
Plaintiffs, in order to avoid a reduction in recovery as a result of their own contribution to the contamination, construe “persons" to mean “defendants.” This reading gives the plaintiffs unduly favorable treatment under the statute for no apparent reason. In a contribution lawsuit among solvent parties, it is not predictable who will wind up on the plaintiffs’ side of the versus. For instance, if Charles Farr, a status liable party under §5(a)(2), had incurred response costs and sued plaintiffs, could it be seriously argued that his own contribution to the contamination should not reduce his recovery?
Simply being on the plaintiffs side of the case should not result in more favorable treatment under the statute. In a comparable CERCLA case, Chesapeake and Potomac Tel. v. Peck Iron and Metal Co., 814 F.Supp. 1269 (E.D. Va. 1992), the court pointed out that the plaintiff should not benefit merely by being on the plaintiffs side of the case. Id. at 1277. It ruled that joint and several liability would be granted against the defendants, but only as to those response costs for which plaintiff was not responsible. Id. at 1277-78. Furthermore, the court reserved the right to allot part of any orphan share(s) to the plaintiff. Id. at 1278.
It is, of course, canon that it is the court’s role to interpret statutes, not rewrite them. But the court must look beyond the express language of the statute where a literal interpretation would lead to an absurd result. Wilshire Westwood Associates v. Atlantic Richfield Corporation, 881 F.2d 801, 804 (9th Cir. 1989). I am unable rationally to construe this sentence taking “negligence” in its common law sense. Viewing the statute as a whole, and having in mind general principles of contribution among jointly liable parties, the only sensible construction which I can give to the sentence is that “negligence” must be taken to mean “liable.” This, it seems to me, would be consistent with the apparent legislative intent.[5]
I next turn to the words “pro rata.” Pro rata divisibility of damages among jointly liable parties is consistent with the common law[6] and, generally, with G.L.c. 231B.[7] Nothing in the use of these words supports plaintiffs’ argument that the defendants are jointly liable to the plaintiffs. The main issue is whether damages are to be divided per capita or on equitable sharing principles.
“Pro rata” is defined by Black’s Law Dictionary 1220 (rev. 6th ed. 1990) as “proportionately; according to a rate, percentage or proportion . . . according to a rule or proportion.” To determine each party’s pro rata share, there must be a reference point or “measuring stick” to determine the proportion. At trial I instructed the jury to determine each party’s equitable share of the response costs by considering the following factors: 1) the degree of care exercised by the parties with respect to the hazardous materials involved; 2) the degree of involvement by the parties in the generation, storage or disposal of the hazardous materials; 3) the amount of hazardous materials involved and how it was released into the environment; 4) the knowledge and/or acquiescence of the parties in the contamination activities; 5) the relative fault of the parties in causing the release of the hazardous materials; and 6) the period of time each of the parties actually owned or operated on the site in relationship to when the releases occurred. The principal source for this charge was Environmental Trans. Systems, Inc. v. Ensco, Inc., 969 F.2d 503, 508 (7th Cir. 1992).
Nothing in our case law suggests that “pro rata” as used in the pre-1992 version of c. 21E, §4 cannot be construed to incorporate equitable sharing of response costs among status liable parties. Dicta from two Supreme Judicial Court cases suggests that equitable sharing would be appropriate. In Sanitoy, Inc. v. Ilco Unican Corp., 413 Mass. 627 (1992), the plaintiff, who purchased contaminated property from the defendant, was awarded 30% of its response costs. Although the award was not at issue, the SJC in dicta stated:
A party that undertakes such remedial action is not necessarily liable for the entire cost of assessment, containment, and removal. Such a party is entitled to reimbursement from other parties in proportion to their relative degrees of contribution to the contamination as a function of the total cost of assessment, containment and removal.
Id. at 630.
*281 In Mailman’s Steam Carpet Cleaning Corp. v. Lizotte, 415 Mass. 865 (1993), a third-party defendant, Bolster Oil Co., argued that any recovery under c. 21E should be equitably divided among the parties according to common law principles of contribution. Id. at 874. The SJC rejected Bolster’s argument, not because it rejected equitable sharing, but because the jury essentially found Bolster itself caused the contamination and “was therefore the only party equitably responsible for statutory damages.” Id. at 875. Accord, Environmental Trans. Systems, Inc. v. Ensco, Inc., 969 F.2d 503, 512 (7th Cir. 1992). Thus, the concept of equitable apportionment among jointly liable parties is implicit in SJC decisions before the 1992 amendments. Accordingly, judgment shall enter against each defendant only in the amount of their equitable shares as determined by the jury, plus interest. Attorneys fees and costs will be discussed later in this opinion.
PLAINTIFFS’ MOTION FOR DECLARATORY RELIEF
The plaintiffs, although not having sought relief per G.L.c. 231A, nonetheless move for ajudgment declaring:
1) That the defendants are jointly and severally liable to the plaintiffs for all reasonable assessment, containment, and removal costs the plaintiffs may incur in the future in response to the contamination at or from this site;
2) That the defendants are jointly and severally liable to the plaintiffs for (a) the full amount recovered from the plaintiffs for the costs of any assessment, containment, removal, remedial, or other response action incurred by the Department of Environmental Protection or any other person, and (b) any damage or loss recovered from the plaintiffs for damage or injury to, destruction of, or loss of natural resources resulting from the release or threat of release of hazardous materials at the site;
3) That the plaintiffs are not liable for any costs of assessment, containment, removal, remedial or any other response action at the site;
4) That the defendants are jointly and severally liable to the plaintiffs for any amount recovered from the plaintiffs for damage to real and personal property of any other person incurred as a result of a release or threat of release of hazardous materials at or from the site; and
5) That each defendant shall indemnify the plaintiffs and hold them harmless against any liability they may incur as a result of claims asserted against them regarding hazardous materials contamination at or from the site.
In the previous section of this decision I have rejected plaintiffs’ arguments that the defendants may be held jointly and severally liable for the entire amount of the response costs incurred to date. The same reasoning would apply to any future costs or any other liability incurred by the plaintiffs. In addition, the plaintiffs’ amended complaint does not seek declaratory relief. In a complex c. 21E case pending since 1989, it strikes me as unfair to impose a sweeping judgment on the defendants which was never requested until after trial. Finally, I doubt that declaratory relief would settle future controversies, and it may create unnecessary and unanticipated confusion. Any future action concerning contamination on or related to this site will involve fact issues unresolved in this case. For instance, the question of reasonableness of future response costs will always be open. To be sure, this litigation (subject to appeal) has resolved important factual disputes which the parties will be precluded from relitigating. Cases which may arise in the future with respect to this site should be dealt with only if and when they arise.
PLAINTIFFS’ MOTION FOR COUNSEL FEES AND COSTS
The plaintiffs were represented by one of the trustees, Joseph A. Martignetti, from the beginning of the case in November 1989 to June 1991 when the plaintiffs retained present trial counsel, Anderson & Krei-ger. Mr. Martignetti, a member of the bar since 1981, has presented an affidavit setting forth his pretrial work on the case and his approximate hours. Mr. Martignetti evidently did not keep contemporary time records so that his hours are submitted as estimates. He seeks an award of fees of $76,625.00 (613 hours x $125.00 per hour) and expenses of $4,414.77.
Anderson & Kreiger represented the plaintiffs from June 1991 to the present. Lead trial counsel Arthur Kreiger also has submitted an affidavit detailing his firm’s efforts on behalf of the plaintiffs through trial. Fees and expenses sought by Anderson & Kreiger are $195,730.55 in fees and $5,983.20 in disbursements. Anderson & Kreiger seek an additional $6,624.95 for 50.62 hours of work post trial, and $155.99 in expenses. Plaintiff also seek recovery for a final invoice for “litigation support” from plaintiffs’ expert, GZA, of $1,122.00.
Fees and costs are sought under c. 21E, §15, as added by St. 1986 c. 554, §3. A discretionary award of attorneys fees and costs under this section applies to private party claims made under c. 21E, §4. Sanitoy, Inc. v. Ilco Unican Corp., 413 Mass. 627, 633 (1992). Here I conclude, as in Sanitoy, that the action advanced the purposes of c. 21E.
I base my award of fees and costs on my extensive familiarity with the case dating back to 1991, when I heard arguments on and issued an opinion on summary judgment motions. I also conducted several pretrial conferences with counsel in 1994 before trial with respect to scheduling, possible settlement, and evidentiary matters. I presided over the trial from April 12 to April 22, 1994, and of course have dealt with the post trial motions.
The plaintiffs’ case was well prepared and presented. All pretrial orders, some of which were bur *282 densome, were complied with. Complex evidentiary issues were brought to the court’s attention in advance and were well briefed and argued. Witnesses for plaintiffs were available when needed and well prepared to testify. Plaintiffs’ counsel’s direct examinations and cross examinations were well organized and executed. The case had many complex factual and legal issues. The result, particularly with respect to Haigh-Farr’s liability as an operator, was very good for plaintiffs. The rates charged by Anderson & Kreiger are well within rates charged by firms with comparable expertise.
I am not as familiar with Mr. Marügnetti’s work, since most of it occurred outside of my presence. I conclude, however, based on my overall familiarity with the factual and legal complexities of the case, that the time which he spent on initiating the case, doing discovery, and handling the early motions, the hourly rate charged, and the expenses incurred, were all fair and reasonable.
Furthermore, as occurred in Santtoy, the defendant Charles Farr concedes the reasonableness of the fees requested by submission of his counsel’s affidavit indicating fees charged to him before trial exceeding those now sought by plaintiffs.
The defendants’ position with respect to the fees is that since the jury found all parties roughly equally responsible for the response costs, each should bear their own counsel fees. The conclusion does not follow from the premise. The plaintiffs, not the defendants, incurred the response costs and had to sue to establish their entitlement to reimbursement. Not to allow plaintiffs to recover counsel fees in a case where they may have contributed to the contamination would rim counter to the policy of the statute to encourage prompt private party cleanup.
The final question with regard to fees and costs is whether the defendants should be jointly and severally liable for them. Although I have rejected the plaintiffs’ position that the defendants should be held jointly and severally liable for the response costs, the same result does not necessarily follow concerning the fees. In Sanitoy, Inc. v. Ilco Unican Corp., 413 Mass. 627 (1991), the trial judge was reversed for linking the fee award to the percentage of response costs recovered. (Sanitoy recovered 30% of its response costs; and the trial judge, finding the fees reasonable, nonetheless reduced them to 30% of the total). Id. at 633-34. The holding in Sanitoy compels the conclusion here that each defendant be jointly and severally responsible for 100% of plaintiffs’ fees and costs, even though they each are only liable for a portion (35%) of the response costs.
ORDER
For the reasons set forth in this opinion, judgment shall enter that defendants are severally liable for their equitable share of the response costs as determined by the jury. Plaintiffs’ motion for declaratory relief is DENIED. Plaintiffs’ motion for fees and costs is ALLOWED. Fees in the amount of $278,880.50 and costs in the amount of $11,519.97 are awarded to plaintiffs, for which amount the defendants shall be jointly and severally liable. The parties shall meet and agree upon an appropriate form of judgment in accordance with this opinion for submission to the court for review and signature no later than July 15, 1994. In calculating the judgment, the prior settlement shall be accounted for, and interest shall be computed in accordance with the procedure established in Harvey v. Essex Bancorp, Inc., 25 Mass.App.Ct. 323, 326 (1988).

 Property damage claims under G.L.c. 21E, §5(a)(iii) were dismissed on summary judgment motions before trial.

 Plainüffs claim that there was insufficient evidence for the jury to conclude that their failure to maintain the tank caused the hazardous materials to leak. I disagree. Entitled to some evidentiary weight was the plaintiffs’ answer to an interrogatory that the tank leaked. See Chaplain v. Dugas, 323 Mass. 91, 94 (1948).

 Contrary to Charles Farr’s argument, persons liable on a c. 21E, §4 claim for reimbursement are described in c. 21E, §5(a). Mailman’s Steam Carpet Cleaning Corp. v. Lizotte, 415 Mass. 865, 873 (1993).

 The parties agree that a settlement of $18,000.00 with the prior owners must be accounted for.

 In the hope of avoiding a retrial if my analysis proves incorrect, I submitted a question to the jury concerning the plaintiffs’ negligence. The jury found that the plaintiffs failed to exercise reasonable care in their maintenance of the underground storage tank. I recognize, as the SJC pointed out in Zeller v. Cantu, 395 Mass. 76, 85 n.8 (1985), that negligence involves a duty to another person, and that the negligence of the plaintiffs here was in the nature of contributory negligence. Since plaintiffs did not have to prove defendants’ negligence to recover under c. 21E, strictly speaking the concept of contributory negligence is not applicable. This simply highlights the difficulty of construing the word “negligence” as used in c. 21E, §4.

 At common law, there was no contribution among joint tortfeasors. G.W. Gale Lumber Co. v. Bush, 227 Mass. 203, 205 (1917). General Laws, Chapter 231B, enacted in 1962, abrogated the common law rule and provided for contribution among joint tortfeasors. Joint contractual obligors have always been entitled to contribution. Quintin v. Magnant, 285 Mass. 450, 451-52 (1934). If one of the obligors is insolvent, the others bear the loss from the “orphan share” equally. Carey v. Holmes, 82 Mass. 127 (1860).

 Although one can plausibly argue that G.L.c. 231B should apply to an action under c. 2 IE §4, none of the parties have taken that position here.